UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **RICHARD GLOVER, et al.**, <br><br> Plaintiffs, <br><br> v. <br><br> **MONICA RIVAS, et al.**, <br><br> Defendants. | 2:19-cv-13406 <br><br> **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS (ECF NO. 38)** |

Plaintiffs Richard Glover, Tina Glover, and R.G. bring this case alleging violations of various federal civil rights. ECF No. 29. They are suing forty-six individuals, most of whom are prison officials employed at G. Robert Cotton Correctional facility in Jackson, Michigan. In this motion to dismiss, the Michigan Department of Attorney General represents forty-two of those Defendants who are current or former employees of the Michigan Department of Corrections.[1] ECF No. 38, PageID.832-33. Defendants here argue that Plaintiffs' complaint,

---

[1] Three Defendants, Drs. Herro and Hallett, and Nurse Practitioner Dione Wright, are employees of Corizon, Inc., a private medical provider contracted to provide medical services in state prisons. ECF No. 38, PageID.832. They are represented by separate counsel and have moved for dismissal in a separate filing not addressed in this Order. *See* ECF No. 37. Mark Winters is named in the complaint as a Sergeant at the facility. But the record shows he is not represented by any counsel.

because of its length, verbosity, and vagueness, should be dismissed for failing to state a claim and for violations of pleading and joinder rules.

As will be explained below, the Court will **GRANT IN PART** and **DENY IN PART** Defendants' motion to dismiss.

## I.   Background

Plaintiff Richard Glover is currently incarcerated at G. Robert Cotton Correctional facility in Jackson, Michigan. ECF No. 29, PageID.611. His wife, Plaintiff Tina Glover, and infant child, Plaintiff R.G., have made regular efforts to visit and spend time with him. *Id*. at PageID.621. However, Plaintiffs allege in their complaint that Defendants have repeatedly made it difficult for them to do so. Their troubles began on November 2017. *Id*. During a visit, Plaintiffs Tina and R.G. allege to have experienced harassment, unlawful strip searches, groping, and other negative treatment at the security gate. *Id*. at PageID.624. When Plaintiffs tried to complain to the supervisors about being so mistreated, prison officials were dismissive of their allegations and became hostile. *Id*. at PageID.623-24.

What followed, according to the lengthy Amended Complaint, was years of retaliation in the form of harassment, threats, abuse, and neglect. *See* ECF No. 29. As a consequence, Plaintiffs brings this action detailing various instances in which different prison officials retaliated against them for filing grievances. Plaintiffs claim that filing grievances

2

about the retaliation and harassment begot even more intense retaliation and harassment. For instance, Plaintiffs allege they were searched more often at the security gate and even subjected to unlawful strip searches. Some prison officials used their position to sexually assault or humiliate them. *Id*. at PageID.666. Plaintiff Richard Glover alleges that his mail was not being sent and received properly. *Id*. at PageID.632. Sometimes, prison officials tampered and delayed his mail, resulting in him losing further mailing privileges. *Id*. In another instance, prison officials threatened to and actually caused Plaintiff Richard Glover to be transferred to a facility in the Upper Peninsula for filing too many grievances. *Id*. at PageID.641. The distance made it prohibitively difficult for his family to spend time with him.

Plaintiff Richard Glover further alleges that prison officials violated his Eighth Amendment rights by being deliberately indifferent to his serious medical conditions. For example, he alleges that several Defendants did not provide him an adequate step ladder to climb up to the top bunkbed. *Id*. at PageID.648. This caused him to fall and suffer injuries to his head. At other times, despite Plaintiff Richard Glover having authorization from a hospital for such medical privileges, prison officials retaliated by taking away his medication, wheelchair, walker, and cane without an appropriate basis. *Id*. at PageID.654.

Because of the length of time during which Plaintiffs claim they were suffering from retaliation, their allegations are legion. The Amended Complaint includes 11 counts, 78 pages, and 317 paragraphs detailing how some forty-six Defendants violated Plaintiffs' constitutional rights. *See* ECF No. 28. In response, the Michigan Department of Corrections Defendants move to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* ECF No. 38. Defendants contend that the complaint "pleads conclusory allegations" and is a "morass of unrelated claims and defendants that will make it practically impossible for the defendants to defendant against." *Id.* at PageID.853-54. Defendants argue that the complaint's length, verbosity, and lack of sufficient detail violate the requirement that pleadings must be short, plan, and direct. Fed. R. Civ. P. 8(a). Defendants further assert that the complaint violates joinder because it contains unrelated claims against different Defendants. Fed. R. Civ. P. 18(a).

The question, therefore, is whether Plaintiffs' Amended Complaint violates the rules of pleading and joinder such that the Court should grant Defendants' motion to dismiss?

## II.   Legal Standard

### a. Civil action for deprivation of rights

A civil rights claim under 42 U.S.C. § 1983 requires two showings: (1) the defendant acted under color of state law; and (2) the offending conduct deprived the plaintiff of rights secured by federal law. *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998) (citations omitted). A § 1983 claim must fail if plaintiff is unable to establish an essential element. *Redding v. St. Edward*, 241 F.3d 530, 532 (6th Cir. 2001). "Persons sued in their individual capacities under § 1983 can be held liable based only on their own unconstitutional behavior." *Heyerman v. County of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012).

### b. Motion to dismiss under Rule 12(b)(6)

Next, Rule 12(b)(6) of the Federal Rules of Civil Procedure permits dismissal of a lawsuit where the defendant establishes the plaintiff's "failure to state a claim upon which relief can be granted." *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008). Consideration of a Rule 12(b)(6) motion is confined to the pleadings. *Id.* But courts may also look to "exhibits attached [to the complaint], public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss" without altering this standard. *Rondigo, LLC v. Twp. of Richmond*, 641 F.3d 673, 680-81 (6th Cir. 2011). In evaluating the motion, courts "must construe the complaint, accept all well-pled factual

5

allegations as true and determine whether the plaintiff undoubtedly can prove no set of facts consistent with their allegations that would entitle them to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006)).

Though this standard is liberal, it requires a plaintiff to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" in support of her grounds for entitlement to relief. *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)). Under *Ashcroft v. Iqbal*, the plaintiff must also plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 556 U.S. 662, 678 (2009) (citation omitted). A plaintiff falls short if she pleads facts "merely consistent with a defendant's liability" or if the alleged facts do not "permit the court to infer more than the mere possibility of misconduct." *Albrecht*, 617 F.3d at 893 (quoting *Iqbal*, 556 U.S. at 678-679).

## III.   Discussion

Defendants move to dismiss Plaintiffs' complaint under Federal Rules of Civil Procedure 12(b)(6). *See* ECF No. 38. Their arguments fall into three general groups. First, that Plaintiffs fall short of Rule 8's requirement that a complaint be short and plain because their

6

complaint is "so lengthy yet so vague." *Id*. at PageID.850 (citing Fed. R.

Civ. P. 8(a)(2)). Second, that Plaintiffs' complaint commits misjoinder of

parties because it contains unrelated claims against different

Defendants. Fed. R. Civ. P. 18(a). Finally, Defendants say the complaint

fails to plead facts to support allegations of failure to intervene and civil

conspiracy. The Court addresses these arguments in turn.

### a. Defendants' motion to dismiss for Rule 8(a) violations is granted as to some claims.

Defendants contend that the complaint lacks specific detail "about

when much of the alleged misconduct occurred" and "whom among the

individual defendants committed the misconduct." ECF No. 38,

PageID.835. For example, they cite to Plaintiffs' use of the generic and

collective term "defendants" without specifying which of the numerous

defendants were involved in a given event or set of actions. In another

example, Defendants point to the lack of specificity of "when, where, or

how the individual defendants violated Plaintiffs' rights." *Id*. at

PageID.837. Accordingly, Defendants move to this dismiss Plaintiffs'

complaint because it violates Rule 8(a), which requires that Plaintiffs

file a complaint that sets forth "a short and plain statement of the

claim…" Fed. R. Civ. P. 8(a)(2).

In the context of § 1983 claims, conclusory allegations of

unconstitutional conduct without specific factual allegations fail to state

a claim. There must be some factual basis for such claims set forth in

the pleadings. *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996). In *Lillard*, the Sixth Circuit considered whether the district court erred in dismissing plaintiffs' First Amendment claims on the ground that they were not plead with enough specificity. *Id.* The court opined that while this pleading standard does not require establishing every particularity of a claim, it does require that the allegations must be sufficient to "'give the defendant 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Id.* (citing *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994)).

Complaints must contain "either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" *Id.* (citing *Allard v. Weitzman (In re DeLorean Motor Co.)*, 991 F.2d 1236, 1240 (6th Cir. 1993)). The *Lillard* court held that the plaintiffs failed to state a claim because the complaint included conclusory allegations and post hoc rationalizations. The assertions regarding their fear of retaliation were vague and were not specifically tied to the defendant's conduct. *Id.* In addition, the plaintiffs did not allege facts that could establish that defendant had a motive for retaliation.

District courts have also dismissed complaints where neither the court nor the defendants can readily identify the claims asserted. *See Adams v. Semcken*, 2020 WL 5870183, at *2 (E.D. Mich. 2020)

8

(dismissing plaintiff's complaint for failing to explain the role of each of the 74-plus defendants with particularity); *see also Asbury v. Bisig*, 70 F. App'x 247 (6th Cir. 2003) (affirming dismissal of complaint for failing to identify defendants or explain their roles and for failing to link the statutory violations to any factual allegations); *Plymale v. Freeman*, 1991 WL 54882 (6th Cir. 1991) (affirming dismissal with prejudice for plaintiff's failure to state a simple, concise, and clear in their complaint); *McHenry v. Renne*, 84 F.3d 1172, 1180 (9th Cir. 1996) ("Something labeled as a complaint but written more as a press release, prolix in evidentiary detail, yet without simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs, fails to perform the essential functions of a complaint.").

Considering the framework above, the question is whether Plaintiffs' allegations are sufficiently pleaded such that they survive Rule 8(a) scrutiny. If not, which claims should be dismissed? Although it is true that Plaintiffs' complaint is lengthy and at some points vague and difficult to understand, it is no "Serbonian Bog". *See* John Milton, *Paradise Lost*, Book II, line 592-94 (1667) ("that Serbonian bog…where armies whole have sunk."). On its face, the complaint might seem intimidating. But upon a close and diligent reading, it becomes clear that many of the claims can withstand scrutiny. Dismissal of the complaint in its entirety is thus not appropriate. Nevertheless, some of

the claims cannot be squared with Rule 8's requirements of basic clarity. The Court will thus explain in detail which of Plaintiffs' claims must be dismissed and which survive. Pursuant to Rule 8(a), the following claims are dismissed:

i. **Count VI alleges that Defendants violated his right to Equal Protection under the Fourteenth Amendment.**

In Count VI, Plaintiffs Richard Glover, Tina Glover, and R.G. make conclusory allegations that fail to cite the essential elements necessary to plead a violation of the Equal Protections Clause. ECF No. 29, PageID.678-79. Plaintiffs allege that Defendants intentionally treated them differently without a rational basis for doing so. *Id*. But there is no constitutional right to be free from being treated differently regardless of the circumstances. It is axiomatic that the state and its agents must necessarily treat individuals differently at times depending on the reasons for the different treatment and the nature of their circumstances. Moreover, Plaintiffs do not allege that they are members of a protected class. Instead, Plaintiffs cite specific instances where they were treated differently by Defendants and allege that such treatment was applied to them without any "rational basis." *Id*. at PageID.678-79. But it is not clear from the complaint how such differential treatment, without more, amounts to an Equal Protection Clause violation under the Fourteenth Amendment. *Id*. at PageID.679-80. This claim is therefore dismissed with prejudice.

10

### ii. Count VII alleges discrimination in violation of Americans with Disabilities Act and Rehabilitation Act.

In Count VII, Plaintiff Richard Glover alleges that because of his fall and subsequent injury and seizures, he is now disabled. ECF No. 29, PageID.680-81. Because of this disability, Plaintiff alleges that the Count VII Defendants discriminated against Plaintiff by not allowing him to use the elevator to attend his classes and by not allowing him to sit at the handicapped table in the dining hall. *Id*.

Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The Supreme Court has determined that the protections of Title II of the ADA and the Rehabilitation Act extend to incarcerated persons housed in state prisons. *Pennsylvania Dep't of Corrections v. Yeskey*, 524 U.S. 206 (1998).

In order to make a prima facie showing of discrimination in violation of the ADA, a plaintiff must prove that he "(1) has a disability; (2) is otherwise qualified; and (3) is being excluded from participation in, being denied benefits of, or being subject to discrimination under, the program solely because of the plaintiff's disability." *Dillery v. City of Sandusky*, 398 F.3d 562, 567 (6th Cir. 2005) (citations omitted); *see also*

*Love v. Westville Correctional Center*, 103 F.3d 558, 560 (7th Cir. 1996) (applying the ADA to the prison setting).

Here, Plaintiff Richard Glover fails to establish the prima facie elements of a disability discrimination claim under Title II of the ADA. Although Plaintiff cites to his medical condition as a result of his injuries, "a claimant must initially prove that he or she has a physical or mental impairment." *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 195 (2002). But "[m]erely having an impairment does not make one disabled for purposes of the ADA." *Id.* Plaintiff must further demonstrate that the impairment substantially limits a major life activity. *Id.* (citing 42 U.S.C. § 12102(2)(A) (1994 ed.). Plaintiff has not done so here. *See* ECF No. 29, PageID.681. Plaintiff's mere characterization of his injury as a disability and his recounting of incidents where Defendants treated him differently because of his injury do not meet the pleading standards to allege a violation of the ADA. Therefore, Count VII must be dismissed with prejudice for failure to state a claim.

### iii.  Count VIII alleges Defendants formed a conspiracy to deprive Plaintiffs of their constitutional rights.

In Count VIII, Plaintiffs allege that the Defendants named in this Count conspired by agreeing "to retaliate against Plaintiffs for their engagement in protected conduct." ECF No. 29, PageID.682. Such

12

actions constitute "impermissible conspiracy to deprive an individual of their rights to be free from bodily harm." *Id.*

A civil conspiracy is "an agreement between two or more persons to injure another by unlawful action." *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985). A plaintiff must establish that "there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant." *Id.*

But Defendants respond that the intra-corporate conspiracy theory offers a defense to such claims where members of the same collective entity are alleged to have engaged in a conspiracy. *Hull v. Cuyahoga Valley Joint Vocational School Dist. Bd. of Educ.*, 926 F.2d 505, 509 (6th Cir. 1991). That is because "a corporation cannot conspire with its own agents or employees." *Id.* However, an exception to the intra-corporate doctrine may be shown when the members of the same collective entity act outside the scope of their employment. *Barrow v. City of Hillview, Ky.*, 2017 WL 6396136, at *5 (6th Cir. 2017). Moreover, simply suing an official in his individual capacity does not establish that such members were acting outside the scope of their employment. *Jackson v. City of Columbus*, 194 F.3d 737, 753 (6th Cir. 1999).

Here, the intra-corporate doctrine bars Plaintiffs' claims because Defendants are members of the same entity, the Michigan Department

13

of Corrections. *See* ECF No. 29. Furthermore, Plaintiffs have not alleged that the Defendants were not acting in the scope of their employment. *See id*. And suing Defendants in their individual capacities is not enough to negate the application of the intra-corporate doctrine. *See Jackson*, 194 F.3d at 753. Therefore, Count VIII must be dismissed with prejudice.

### iv.  Counts IX and XI alleges that Defendants failed to intervene in violation of Plaintiffs' constitutional rights.

In Counts IX and XI, Plaintiffs argue that the Defendants named in these counts violated their constitutional rights by failing to intervene in the unlawful conduct enumerated throughout the complaint. ECF Nos. 29, PageID.682-83 and PageID.684-86. Plaintiffs offer the proposition that "liability premised on a failure to intervene theory is proper where *any* constitutional right is implicated." ECF No. 45, PageID.945 (citing *Smith v. Ross*, 482 F.2d 33, 36-37 (6th Cir. 1973)) (emphasis in original). Defendants respond that "a failure to intervene claim only applies in the context of excessive force being used by a corrections offer against an inmate, which is not a claim any of the plaintiffs have made." ECF No. 38, PageID.840. Plaintiffs reply by citing *Bunkley v. City of Detroit* for the proposition that "it is settled in the Sixth Circuit 'that failure to intervene extends beyond excessive force.'"). ECF No. 45, PageID.945 (citing 902 F.3d 552, 565 (6th Cir. 2018)).

14

Plaintiffs also rely on *Smith v. Ross*, claiming that "liability premised on a failure to intervene theory is proper where any constitutional right is implicated." ECF No. 45, PageID.945 (citing 482 F.2d 33, 36-37 (6th Cir. 1973)). In *Ross*, the court delineated the contours of a police officer's duty to intervene when an officer is a witness to the violation of an individual's rights. *Id*. The plaintiffs were members of a musical band comprised of black and white individuals. *Id*. The townspeople, however, had a general hostility towards such interracial affiliations. *Id*. A deputy sheriff attempted to persuade the band members to leave a building they had rented after he received reports that townspeople were preparing to don white sheets and burn down the building. *Id*. at 35. The deputy sheriff testified that the plaintiffs "would receive the same police protection enjoyed by the other townspeople but indicated that his ability to protect them was limited." *Id*.

The district court found that Ohio state law required the deputy sheriff to maintain the peace and that he had met this duty because, by warning the plaintiffs, he "acted in good faith and with probable cause to alleviate a potential danger created by plaintiffs." *Id*. at 36. On appeal, plaintiffs argued that the deputy sheriff conspired with the townspeople to remove them from the house and deprive them of their constitutional rights. *Id*. at 36. The Sixth Circuit rejected this argument, establishing that a police officer "can be liable under § 1983

15

when by his inaction he fails to perform a statutorily imposed duty to enforce the laws equally and fairly." *Id*. And in Ohio, state law imposes a duty on police officers "to keep the peace in his county." *Id*. at 35 (citing Ohio Revised Code, § 509.10). The court determined the police officer's inaction "denies equal protection to persons legitimately exercising rights guaranteed them under state or federal law." *Id*. at 36-37. But the record supported the district court's conclusion that the deputy sheriff's inaction was not "causally related to the harm suffered by the [plaintiffs]." *Id*. at 37.

Plaintiffs in turn rely on *Bunkley v. City of Detroit* for the proposition that *Ross* established in the Sixth Circuit that a duty to intervene extends beyond the realm of excessive force situations. ECF No. 45, PageID.945. But Plaintiffs' view of *Ross* and *Bunkley* are not accurate. True, *Ross* established that officers have a duty to perform when there is a "statutorily imposed duty to enforce the laws equally and fairly." *See Ross*, 482 F.2d at 36-37. But that rule does not create a general duty for prison officials to intervene whenever they may witness violation of any of a prisoner's constitutional rights. And as for whether Defendants violated *Ross*'s standard for intervention, Plaintiffs fail to cite to any statute that requires prison officials to intervene in the various circumstances in which Plaintiffs' constitutional rights were violated here. For that reason, Plaintiffs do not plead enough facts constituting a failure to intervene as articulated in *Ross*.

16

*Bunkley* also does not support Plaintiffs' position. *See Bunkley,*
902 F.3d 552. In *Bunkley*, the plaintiff, a 22-year-old Black man, took
his father to the hospital after learning that he had been shot. *Id.* at
555. Police officers, who had been visiting the hospital after responding
to a separate shooting, assumed that plaintiff was the assailant in their
investigation. *Id.* at 557. On their assumption that the plaintiff
matched the description of the assailant in their investigation, the
officers arrested the plaintiff. The plaintiff was subsequently convicted
for the other shooting. After spending nearly two years in prison, it
became evident that the officers made a mistake and that some of them
knew the truth from the start. *Id.* The plaintiff filed suit to overturn his
conviction.

The Sixth Circuit considered whether the district court erred in
concluding that the defendant officers violated plaintiff's clearly
established right by failing to intervene in his wrongful arrest. *Id.* at
564. The defendants, officers who were witnesses to plaintiff's arrest,
argued that the right to have an officer intervene to prevent a wrongful
arrest was not clearly established in the Sixth Circuit. *Id.* The plaintiff,
who was at that point exonerated, filed a civil suit for wrongful arrest
against the police officers who had knowledge that the arresting officer
lacked probable cause to arrest him. The Court of Appeals rejected
defendants' argument after finding that "[a]ny of these officers had time
to stop, intervene, and prevent this arrest-without-probable-cause." *Id.*

17

at 566. In so ruling, the Sixth Circuit stressed that there was clear precedent: that officers have a duty "to intervene to prevent an arrest not supported by probable cause." *Id*. at 566 (citing *District of Columbia v. Wesby*, 138 S.Ct. 577, 590 (2018)).

However, in considering whether Plaintiffs here have properly plead in their complaint that Defendants have a duty to intervene, *Bunkley* says nothing about whether police officers' duty to intervene extends beyond claims involving excessive force or preventing an unlawful arrest. Plaintiffs mistakenly attribute to *Bunkley* the holding that an officer's  "failure to intervene extends beyond excessive force." Rather, that statement of *Bunkley* was merely quoting the case in which the district court relied upon. *Id*. (citing *Holloran v. Duncan*, 92 F. Supp. 3d 774 (W.D. Tenn. 2015)). In *Holloran*, the district court considered whether the right to intervention by police officers to prevent unlawful arrest was clearly established in 2012. *Holloran*, 92 F. Supp.3d at 793. The district court agreed with the defendants that "the United States Supreme Court has *not* spoken to the issue of whether failure to intervene extends beyond the excessive force context." *Id*. at 795. (emphasis added).

Thus, Plaintiffs' contention that "it is settled in the Sixth Circuit that 'failure to intervene extends beyond excessive force'" is inconsistent with the text of case law in which they rely upon. Neither *Bunkley* nor *Ross* clearly establish that Defendants here had a duty to intervene

18

when they witnessed the particular kinds of violations of constitutional rights alleged by Plaintiffs.

Yet, even if Plaintiffs' reading of *Bunkley* were accurate, such a claim would still fail. In order to state a valid § 1983 claim, Plaintiffs must offer support that the same constitutional rights allegedly infringed upon here were already clearly established by either the Supreme Court, the Sixth Circuit, or even any other Circuit Court of Appeals. But the Court could not find such support.

After careful review of Plaintiffs' citations, as well as seminal Sixth Circuit case law addressing this question, the Court concludes that prison officials do not clearly have a duty to intervene beyond the context of excessive force claims. Therefore, Counts IX and XI are dismissed with prejudice.

### b. The remaining Counts survive Rule 8(a) scrutiny.

In taking stock, Counts VI, VII, VIII, IX, and XI are dismissed with prejudice for failing to withstand Rule 8(a) scrutiny. The Court considers the remaining counts in the following subsection.

### i. Count I alleges that Defendants engaged in unreasonable searches in violation of Plaintiffs' Fourth Amendment rights.

In Count I, Plaintiffs Tina Glover and her minor child, R.G., argue that their Fourth Amendment right to be free from unreasonable searches were violated when Defendant Rivas "intentionally groped [Plaintiff Tina Glover] during her pat down" and "subjected R.G. to a

strip search without any justification." ECF No. 29, PageID.667. In addition, during a visit, Defendant Brooks subjected Plaintiff Tina Glover "to endure a strip search in order to visit [Plaintiff Glover]." *Id.* Plaintiffs claim that strip searches are against the facility's policies and was done without probable cause or any other legal justification. *Id.*

The Sixth Circuit has long recognized that prison visitors retain Fourth Amendment protections even though they are electing to visit a prison. In *Long v. Jones*, the Court of Appeals considered whether prison officials violated the Fourth Amendment when they subjected prisoner visitors to strip and body cavity searches regardless of probable cause. 929 F.2d 1111 (6th Cir. 1991). The court determined that strip searches of prison visitors without at least a reasonable suspicion violated clearly established law "because a reasonable officer should have known that such searches would be found unconstitutional." *Id.* at 1116.[2]

The Sixth Circuit in *Spear v. Sowders* considered a similar question and revisited *Long*'s principle. 71 F.3d 626 (6th Cir. 1995). The court first noted that "the Fourth Amendment does not afford a person seeking to enter a penal institution the same rights that a person would have on public streets or in a home." *Id.* at 629-30. Although prison

---

[2] Despite this rule, the court found that the plaintiffs failed to plead a sufficient cause of action because they alleged that the prison officials only lacked probable cause, a lower standard. *See Long*, 929 F.2d at 1116.

visitors enjoy a greater right to privacy than prisoners themselves, visitors can be subjected to some searches, such as a pat-down, as a condition of visitation without any grounds for suspicion. But the Sixth Circuit draws the line at *strip* and body cavity searches as "the most intrusive search possible." *Id*. In balancing the need for prison security against the diminished privacy interests of visitors, the Fourth Amendment requires that prison officials "have at least a reasonable suspicion that the visitor is bearing contraband before conducting such a search." *Id*.

Here, Plaintiffs Tina Glover and R.G. have sufficiently pleaded a violation of their constitutional right under the Fourth Amendment. ECF No. 29, PageID.665-68. Plaintiffs have specifically identified two prison officials, Defendants Rivas and Brooks, as the perpetrators who were acting under the color of law. *Id*. Plaintiffs have also alleged that Defendants violated their clearly established rights to be free from unreasonable searches under the Fourth Amendment. *Id*. They were subjected to strip searches that were against the facility's policies and Defendant Brooks exceeded a reasonable search by groping Plaintiff Tina Glover. *Id*. at PageID.666. Importantly, Plaintiffs have alleged that Defendants had no probable cause, reasonable suspicion, or any other legal justification. *Id*. at PageID.667. As such, taking these claims

21

in the light most favorable to them, Plaintiffs have sufficiently plead a Fourth Amendment claim against both Defendants Rivas and Brooks.

### ii. Count II alleges First Amendment retaliation as to Plaintiffs Tina Glover and R.G.

In Count II, Plaintiffs Tina Glover and R.G. allege that the named Defendants in this count were aware that Plaintiffs were exercising their protected First Amendment rights when Plaintiffs Tina Glover filed complaints and requested to speak with supervisors after experiencing harassment and retaliation at the facility's visitor gate. ECF No. 29, PageID.668-72. After Plaintiff Tina Glover made complaints about the prison officials' conduct during her visitors, she alleges that she experienced retaliation and negative treatment by several prison officials. *Id*. It is alleged that the exercise of her protected First Amendment rights provoked Defendants Rivas and Brooks to increase the number, duration, and intensity of their inspection of Plaintiffs at the gate. This included Defendants strip searching Plaintiff Tina Glover and her minor baby, R.G. Plaintiff Tina Glover alleges that Defendant Rivas groped her breasts and genital areas. *Id*. at PageID.666, 670. Moreover, Plaintiffs experienced retaliation in the form of threats to degrade Plaintiff Richard Glover's conditions of confinement, including threats of transferring him to facilities far away from his family that would be difficult to travel to, terminating visits,

22

lengthening wait times for visits, and the removal of privileges during visits against facility policy. *Id*. at 670-71.

In the Sixth Circuit, "A retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

Here, Plaintiff Tina Glover names thirteen Defendants as liable for violating her First Amendment rights. She has sufficiently stated a claim upon which relief can be granted as to some of these Defendants, but not as to others. Plaintiffs allege that they engaged in lodging complaints about how prison officials treated them on their visits. ECF No. 29, PageID.668-72. Filing grievances constitute protected First Amendment conduct. Plaintiffs have cited numerous adverse actions, including being subjected to strip searches and sexual assault. Such adverse actions, taken in the light most favorable to Plaintiffs, would deter a person of ordinary firmness from continuing to exercise her First Amendment rights. *See Thaddeus-X*, 175 F.3d at 394. Moreover, the complaint plainly alleges that Defendants have made it difficult for Plaintiffs Tina Glover and R.G. to visit Plaintiff Richard Glover as a direct result of Plaintiff Tina Glover's having exercised her clearly

23

established First Amendment rights. As such, Count II sufficiently states a claim that meets Rule 8(a) scrutiny.

However, as to some of the named Defendants, the complaint fails to plead allegations that contain all of the necessary elements to adequately allege First Amendment retaliation. Consequently, as explained below, Count II must be dismissed as to the following Defendants:

- As to Defendant McElroy, there is no allegation that McElroy's actions were motivated by the knowledge that Plaintiffs engaged in protected conduct.

- As to Defendant Napier, who is the warden's administrative assistant, there is no allegation that Napier engaged in an adverse action against them. ECF No. 29, PageID.627.

- As to Defendant Winters, there are no specific allegations about his conduct in the complaint.

- As to Defendant Schubring, there is no allegation that Schubring's actions were motivated by the knowledge that Plaintiffs engaged in protected activity. ECF No. 29, PageID.620.

- As to Defendant Root, there is no allegation that Root's actions were motivated by the knowledge that Plaintiffs engaged in protected activity. ECF No. 29, PageID.660-61.

Count II is therefore dismissed with prejudice as to Defendants McElroy, Napier, Winters, Schubring, and Root. The claims as to the remaining Defendants named in Count II survive.

### iii. Count III alleges First Amendment retaliation against Plaintiff Richard Glover.

In Count III, Plaintiff Richard Glover alleges a similar retaliation claim to that which Plaintiffs Tina Glover and R.G. raise in Count II. Here, Plaintiff Richard Glover states that the thirty-four Defendants named in this count retaliated against him for filing grievances, an activity which constitutes protected First Amendment conduct. ECF No. 29, PageID.672-75. Plaintiff Richard Glover's allegations are numerous, span several years, and cite the conduct of many Defendants he alleges have treated him negatively after he and the other Plaintiffs started to file grievances. ECF No. 29, PageID.639. For the same reasons set out above regarding Count II, the Court finds that Count III adequately pleads the three elements the Sixth Circuit outlined in *Thaddeus-X* as to some of the Defendants. *See* 175 F.3d at 394. But for certain Defendants, for the reasons explained below, Plaintiff Richard Glover's claims of retaliation do not allege all of the necessary elements to state a claim. As to those Defendants, Count III will be dismissed with prejudice:

- As to Defendant Napier, there is no allegation that Napier engaged in an adverse action against Plaintiff. ECF No. 29, PageID.627.

- As to Defendant Scott Bailey, there is no allegation that Scott Bailey engaged in an adverse action against Plaintiff. ECF No. 29, PageID.659.

- As to Defendant Moseley, the complaint fails to allege that Moseley's actions were motivated by the knowledge that Plaintiff had engaged in protected activity. ECF No. 29, PageID.634.

- As to Defendant Madery, there is no allegation that Madery's actions were motivated by the knowledge that Plaintiff had engaged in protected activity. *See* ECF No. 29, PageID.616.

- As to Defendants Reynolds, Marsh, Snyder, Freymuth, Brown, Landfair, Davidson, and Root, the complaint fails to allege that their actions were motivated by the knowledge that Plaintiff had engaged in protected activity. *See* ECF No. 29, PageID.650-61.

- As to Defendant Major Washington, the allegations in the body of the complaint and in Count III are unclear as to whether the allegations are made against Major Washington or Heidi Washington. *See* ECF No. 29, PageID.619.

For these reasons, Count III will be dismissed as to Defendants Napier, Scott Bailey, Moseley, Madery, Reynolds, Marsh, Snyder, Freymuth, Brown, Landfair, Davidson, Root, Heidi Washington, and Major Washington with prejudice. The claims as to the remaining Defendants named in Count III survive dismissal because Plaintiff made adequate factual allegations against them.

### iv.  Count IV alleges that Defendants violated Plaintiff Richard Glover's Eighth Amendment right to be free from deliberate indifference to his serious medical needs.

In Count IV, Plaintiff Richard Glover alleges that the Defendants named here were deliberately indifferent to his serious medical

conditions and needs. ECF No. 29, PageID.675-77. Plaintiff cites instances where Defendants knew of but ignored his needs for a climbing ladder in order to access the top bunkbed in his cell, a walker and a wheelchair, use of an elevator, and prescription medication. *Id*. As a result of Defendants' deliberate indifference, Plaintiff suffered serious injuries.

The Supreme Court has held that a prison official's "deliberate indifference" to a substantial risk of serious harm to an inmate violates the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825 (1994). Prison officials are held liable for an Eighth Amendment violation when an incarcerated plaintiff shows: "(1) 'that he is incarcerated under conditions posing a substantial risk of serious harm,' and (2) that the prison official had 'the state of mind…of 'deliberate indifference' to inmate health or safety.'" *Id*. An incarcerated plaintiff need not show that a prison official had actual knowledge that the harm would actually occur and injure the inmate. *Id*. at 842. It is enough that the prison official acted or failed to act despite his knowledge of a substantial risk of serious harm. *Id*.

The Sixth Circuit elaborated on the Supreme Court's decision in *Farmer* in the context of an incarcerated person's sleeping conditions. *Brown v. Bargery*, 207 F.3d 863 (6th Cir. 2000). In *Bargery*, the incarcerated plaintiff alleged that his sleeping bunk was improperly

installed. *Id*. at 867. He stated that improperly installed beds posed an unsafe sleeping environment because the upside installed bunks "caused inmates to slide off their bunks and land on the concrete cement floor." *Id*. The inmates were also subjected to "the hazards of rolling into protruding anchor bolt studs." *Id*. The Court of Appeals held that "the warden acted with deliberate indifference towards future health problems that the inmates may develop as a result of the unsafe sleeping conditions in their housing cells." *Id*. The court also determined that the plaintiff's allegations "concerning his repeated attempts to notify prison officials about the conditions in his cell" was enough to establish that "the warden knew about and deliberately disregarded the risk to [plaintiff's] health and safety." *Id*.

When prison inmates allege that prison officials failed to attend to their serious medical needs, they must establish two showings. First, the objective component requires a plaintiff to show that "the medical need at issue is sufficiently serious." *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011) (citing *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004)). Second, the subjective component requires a showing that "prison officials have a sufficiently culpable state of mind in denying medical care." *Id*. Courts also distinguish "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical

28

treatment." *Id*. (citing *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976)).

Here, Plaintiff Richard Glover has properly alleged that Defendants' conduct amounted to deliberate indifference violating his Eighth Amendment rights. *See* ECF No. 29, PageID.675-77. Regarding Plaintiff's claims about the safety of his sleeping bunk, he has alleged that the step chair that he was required to use posed an unsafe condition because it was not designed for adults to use to climb bunkbeds. *Id*. Furthermore, Defendants had reason to know of this unsafe condition because Plaintiff made numerous complaints. *Id*. at PageID.675-76.

Plaintiff's allegations that Defendants denied him medical treatment are also sufficiently pleaded to satisfy the objective component. See *Alspaugh*, 643 F.3d at 169. Plaintiff suffers from a serious medical condition as a result of his injuries from falling from the top bunkbed of his cell: he experiences extreme pain, lightheadedness, and dizziness. ECF No. 29, PageID.651. Defendants also knew of Plaintiff's serious medical need resulting from his head injuries and that he needed a walker and a wheelchair to move about and to be able to access the elevator. *Id*. at PageID.676. Because of his serious medical condition, Plaintiff "has fallen several times and continues to experience pain and physical limitations due to his bulging discs." *Id*.

29

As for the subjective component, Plaintiff has made sufficient allegations in stating that Defendants caused Plaintiff "to walk painfully up and down near 60 stairs" after they confiscated his wheelchair and walker and prevented Plaintiff from using the elevator. *See id*. These allegations could conceivably show that the Defendants acted with deliberate indifference towards his serious health problems.

### c. Whether the remaining claims survive Rule 18(a) joinder scrutiny.

Defendants next argue that Plaintiffs' complaint commits misjoinder of claims and parties. Defendant therefore moves for dismissal because Plaintiffs have asserted unrelated claims against different defendants. ECF No. 38, PageID.838. The thrust of Defendants' argument is that Plaintiffs "may not pursue claims of retaliation involving one set of defendants while simultaneously pursuing claims for deliberate indifference to serious medical needs against another set of defendants." *Id*. at PageID.839 fn.1. Defendants point to the challenges in understanding the lengthy complaint and its claims and, for the Court, the potential difficulty in efficiently managing the claims against the various parties. *Id*. Plaintiffs respond that joinder is proper as to all Defendants because they were all engaged in the same transaction or occurrence when they effectuated the conspiracy to violate their rights. ECF No. 45, PageID.937.

30

Defendants may be joined in one action if "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). In the event of misjoinder, district courts may "add or drop a party" or "sever any claim against a party." Fed. R. Civ. P. 21. In determining whether to sever claims, district courts consider the follow factors:

> (1) whether the claims arise out of the same transaction or occurrence;
> (2) whether the claims present some common questions of law or fact;
> (3) whether settlement of the claims or judicial economy would be facilitated;
> (4) whether prejudice would be avoided if severance were granted; and
> (5) whether different witnesses and documentary proof are required for separate claims.

*Mann v. Mohr*, 902 Fed. App'x 871, 875 (6th Cir. 2020) (citations omitted).

In *Mann v. Mohr*, the Sixth Circuit considered whether the district court abused its discretion in granting defendants' motion to sever claims on the grounds that plaintiff's claims lacked a common nexus. 802 Fed. App'x 871 (6th Cir. 2020). Plaintiff, a pro se Ohio prisoner, argued that the chain of retaliatory events showed that his claims arose from the same transaction or occurrence because the various instances of negative treatment stemmed from him asserting

his religious rights. *Id*. at 873. The court concluded that such claims were insufficiently related for the purposes of joinder. Although plaintiff's complaint generally referenced "the Defendants," this by itself "failed to satisfy basic pleading requirements and failed to place these particular defendants on notice that [plaintiff] sought to hold them responsible for the allegations made in Claim 1." *Id*. at 876.

The district court in *Nali v. Michigan Dept. of Corrections* similarly considered joinder factors in determining whether numerous civil rights claims arose from the same transaction or occurrence. 2007 WL 4465247, at *3 (E.D. Mich. 2007). There, an incarcerated plaintiff alleged discriminatory acts at three different correctional facilities within two separate districts. *Id*. The court outlined relevant, but not exclusive, factors in analyzing the issue: "the time period during which the alleged acts occurred; whether the acts of discrimination are related; whether more than one act of discrimination is alleged; whether the same supervisors were involved, and whether the defendants were at different geographic locations." *Id*. Judge Tarnow concluded that permissive joinder was not proper because the claims set forth in the complaint were "factually separable, took place at different time periods, allege that different defendants violated his civil rights in separate ways, and occurred at differing geographic locations." *Id*.

Here, following the Rule 8(a) inquiry and review of case law interpreting joinder rules under Rules 18(a) and 20(a), it is helpful to

take stock of the remaining claims. Counts VI, VII, VIII, IX, and XI are dismissed. Meanwhile, Counts V and X are inapplicable as to the MDOC Defendants. As such, the question is whether Counts I, II, III, and IV consist of (1) allegations constituting the same transaction, occurrence or series of transactions or occurrences; and (2) if any question of law or fact common to all defendants will arise in the action. *See* Fed. R. Civ. P. 20(a).

Having carefully reviewed these claims, the Court concludes that the answer is yes. Taking Plaintiffs' allegations in the light most favorable to them, these claims arise from the same series of occurrences, which began on November 18, 2016. ECF No. 45. PageID.939. Once Plaintiffs began to assert their protected First Amendment rights, the complaint alleges that they encountered increasingly intensified retaliation manifesting itself in a variety of actions by different prison officials, many of whom are named as Defendants here. *See* ECF No. 29. For example, Plaintiff Richard Glover alleges that Defendants independently referenced how his reputation in the facility as a serial grievance filer was well known and that Plaintiffs' filing of grievances provoked prison officials in engaging in retaliatory conduct and neglecting his basic needs. *Id*. at PageID.625-26. In another example, in retaliating and intimidating Plaintiff Richard Glover, Defendant Hokanson referenced grievance filings unrelated to the allegations Plaintiff made about him. ECF No. 29,

PageID.639. Captain Sheryl Bailey, a prison official at the facility, then "twice told Hokanson 'I got your back.'" *Id.* In addition, unlike in *Nali*, where the alleged discrimination took place in different facilities and in different districts, here the alleged discrimination took place in a single facility. *See* 2007 WL 4465247, at *3. Therefore, because Plaintiffs' allegations are confined within a single facility and involve the same prison regulations and overlapping prison officials, a common question of law and fact has been raised. *See* Fed. R. Civ. P. 20(a).

Judicial economy is also served because such common questions will likely be addressed by many of the same pieces of evidence and witness testimony. It would clearly be a waste of judicial resources for Plaintiffs to file individual suits as to each Defendant named here. *See* Fed. R. Civ. P. 20(a). For this reason, Defendants' motion to dismiss as to the remaining counts must fail.[3]

## CONCLUSION

For all the reasons stated, Defendants' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**. Because the Court already directed Plaintiffs to amend their original complaint in order to address its deficiencies, ECF No. 28, and Counts VI, VII, VIII, IX, and XI of the Amended Complaint nevertheless persist in failing to state a claim,

---

[3] In any event, pursuant to Fed. R. Civ. P. 21(a), "[m]isjoinder of parties is not a ground for dismissing an action." The Court retains wide discretion to add or drop a party at any time "on just terms." *Id*. For this reason, Defendants' motion to dismiss also fails.

those Counts are **DISMISSED WITH PREJUDICE**. As to the motion to dismiss the remaining Counts:

- The motion to dismiss is **DENIED** as to Counts I and IV as to all Defendants.

- The motion to dismiss Count II is **GRANTED IN PART** as to Defendants McElroy, Napier, Winters, Schubring, and Root for failure to state a claim. The claims as to these Defendants are **DISMISSED WITH PREJUDICE**. The motion to dismiss Count II is **DENIED IN PART** as to all other Defendants.

- The motion to dismiss Count III is **GRANTED IN PART** as to Defendants Napier, Scott Bailey, Moseley, Madery, Reynolds, Marsh, Snyder, Freymuth, Brown, Landfair, David, Root, Heidi Washington, and Major Washington are dismissed for failure to state a claim. The claims as to these Defendants are **DISMISSED WITH PREJUDICE**. The motion to dismiss Count III is **DENIED IN PART** as to all other Defendants.

- Counts V and X, which do not pertain to the MDOC Defendants, will be addressed in a separate Order. *See* ECF No. 37.

**IT IS SO ORDERED.**

Dated: March 15, 2021               s/Terrence G. Berg
                                    TERRENCE G. BERG
                                    UNITED STATES DISTRICT JUDGE

_____

**Certificate of Service**

I hereby certify that this Order was electronically filed, and the parties and/or counsel of record were served on March 15, 2021.

s/A. Chubb
_____
Case Manager