UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **RICHARD GLOVER et al.**, | 2:19-CV-13406 |
| Plaintiffs, | |
| | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS HALETT, HERRO, AND WRIGHT'S MOTION TO DISMISS (ECF NO. 37)** |
| v. | |
| **MONICA RIVAS et al.**, | |
| Defendants. | |

Plaintiffs Richard Glover, Tina Glover, and R.G. bring this case alleging violations of various federal civil rights by some forty-six prison officials and health care personnel employed at G. Robert Cotton Correctional facility in Jackson, Michigan. ECF No. 29. The health care personnel Defendants are employed by Corizon Health, which contracts with the state to provide medical care in prisons. The Corizon Defendants move to dismiss the suit,[1] ECF No. 37, arguing that Plaintiffs' complaint fails to state a claim under Rule 12(b)(6). Fed. R. Civ. P. 12(b)(6).

---

[1] As employees of Corizon Health, Defendants Drs. Herro and Hallett, and Nurse Practitioner Dione Wright are represented by their own counsel and have filed a motion to dismiss separate from that filed by the Defendants employed by the Michigan Department of Corrections. Accordingly, the Court addresses each motion separately. *See* ECF No. 38.

1

As will be explained below, the Court will **GRANT IN PART** and **DENY IN PART** Defendants' motion to dismiss.

## I.   Background

Plaintiff Richard Glover is an incarcerated person at G. Robert Cotton Correctional facility in Jackson, Michigan. ECF No. 29, PageID.611. His wife, Plaintiff Tina Glover, and minor child, Plaintiff R.G., make regular efforts to visit him. *Id*. at PageID.612-13. During one of these visits in November 2017, Plaintiffs Tina and R.G. allege to have experienced harassment and other negative treatment at the security gate. *Id*. at PageID.624. Plaintiffs attempted to raise the issue with prison officials' supervisors, but their complaints were rebuffed and their treatment worsened. Plaintiffs attempted to file grievances about the subsequent retaliation, but instead they were met with even more intense hostility and retaliation.

The complaint recounts Plaintiffs' enduring years of harassment and retaliation by the prison officials and medical staff. *See* ECF No. 29. As a consequence, Plaintiffs filed a 78-page, 11-count suit against 46 Defendants alleged to have violated many of their constitutional rights. *See id*. The complaint implicates three medical personnel Defendants whose motion to dismiss is before the Court. Those Defendants are: Dr. Victoria Hallett, D.O., a medical provider employed by Corizon Health; Dr. Frederick Herro, M.D., a medical provider employed by Corizon

2

Health; and Nurse Practitioner Dione Wright, a medical provider employed by Corizon Health. *Id*. at PageID.620.

While Plaintiffs' complaint spans years and implicates dozens of prison officials, the relevant period as to these three medical Defendants began after Plaintiff suffered serious injuries after falling from his bunk. ECF No. 29, PageID.647. Plaintiff was attempting to exit his top bunk using a chair provided by the prison. *Id*. Plaintiff fell off the chair, which was not designed to be used as a step stool. *Id*. As a result of injuries to his head and back, Plaintiff suffered seizures, numbness, a concussion, and other pain. *Id*. Plaintiff was taken to a nearby hospital for medical treatment. *Id*. The hospital prescribed Plaintiff various medications, equipment, and details.[2] *Id*. at PageID.648. But when he returned to the prison, Plaintiff alleges that prison officials withheld the medical treatment that was provided by the hospital. *Id*. At some point, Plaintiff sent a healthcare request and was provided a walker and a wheelchair, not by the prison's medical providers, but by the housing unit. *Id*. And after Plaintiff made requests for medical treatment consistent with what the hospital ordered, he alleges that he was threatened with false

---

[2] Details include accommodations for Plaintiff Richard Glover's physical handicaps resulting from his fall. Examples of medical details include privileges for the use of a bottom bunk, wheelchair, cane, elevator, and sitting in handicapped-designated areas of the dining hall.

misconduct tickets and was asked to pay restitution for the broken chair. *Id*. at PageID.649.

Plaintiff continued to request appointments with the prison's medical providers in order to seek treatment for his injuries. But Plaintiff's requests were repeatedly denied or canceled. *Id*. at PageID.650. Eventually, Plaintiff was able to see Defendant Hallett. Hallett issued Plaintiff a medical detail for a bottom bunk, a wooden cane, a wheelchair, extra towels, ice, and medicine. *Id*. Plaintiff asked for muscle relaxer as prescribed by the hospital, but Hallett decided that such treatment was not appropriate. *Id*. The next day, however, Defendant Hokanson, a prison official, took away Plaintiff's medicine anyway. *Id*. at PageID.651.

Plaintiff also encountered numerous instances where prison officials refused to allow him to visit medical providers. For example, when Plaintiff experienced extreme pain and suffered from blurred vision and dizziness, he was accused of faking his symptoms. *Id*. One health unit manager ordered Defendant Hallett to not provide Plaintiff with an elevator detail. *Id*. at PageID.651-52. In other instances, a registered nurse with the prison refused to provide Plaintiff any treatment, canceled his appointments, and told him he was faking his symptoms. *Id*. at PageID.652-54.

After much effort, Plaintiff Richard Glover was finally able to see Defendant Hallett in order to receive medical treatment. *Id*. at PageID.654. But Hallett stated that in order to get treatment, she must conduct a rectal examination on Plaintiff. *Id*. She told Plaintiff that if he did not comply, Hallett would write in his medical record that he refused treatment. *Id*. After some hesitation and doubts about the medical basis of the rectal examination, Plaintiff accepted. During the rectal examination, with Defendant Herro present, Plaintiff experienced injuries, including pain and blood, to his anus. *Id*. Plaintiff further alleges that he suffered extreme mental and emotional pain. *Id*.

Plaintiff filed a grievance as a result of what he alleges was retaliatory conduct. Following the rectal examination, Plaintiff was taken to the hospital for an evaluation. *Id*. at PageID.655. Plaintiff alleges that the hospital found evidence of sexual assault. But the Michigan Department of Corrections denied the finding. *Id*. The hospital also called the Michigan State Police to investigate the claim. *Id*. Plaintiff's complaint states that he continues to receive harassment and other negative treatment by prison officials.

## II.   Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits dismissal of a lawsuit where the defendant establishes the plaintiff's "failure to state a claim upon which relief can be granted." *Jones v. City*

*of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008). Consideration of a Rule 12(b)(6) motion is confined to the pleadings. *Id.* But courts may also look to "exhibits attached [to the complaint], public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss" without altering this standard. *Rondigo, LLC v. Twp. of Richmond*, 641 F.3d 673, 680-81 (6th Cir. 2011). In evaluating the motion, courts "must construe the complaint, accept all well-pled factual allegations as true and determine whether the plaintiff undoubtedly can prove no set of facts consistent with their allegations that would entitle them to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006)).

Though this standard is liberal, it requires a plaintiff to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" in support of her grounds for entitlement to relief. *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)). Under *Ashcroft v. Iqbal*, the plaintiff must also plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 556 U.S. 662, 678 (2009) (citation omitted). A plaintiff falls short if she pleads facts "merely consistent with a defendant's liability" or if the alleged facts do not "permit the court to

6

infer more than the mere possibility of misconduct." *Albrecht*, 617 F.3d at 893 (quoting *Iqbal*, 556 U.S. at 678-679).

## III.   Discussion

The allegations against the Corizon Defendants are found in some but not all of the 11-count Amended Complaint. ECF No. 37, PageID.768. In Counts III and V, Plaintiffs allege that Defendant Hallett violated Plaintiff Richard Glover's First Amendment rights as well as his Eighth Amendment rights protecting against cruel and unusual punishment. *Id.* at PageID.767-68. In Counts IV and VII, they allege that Defendants Hallett and Wright violated Plaintiff Richard Glover's rights under the Eighth Amendment, the Americans with Disabilities Act and the Rehabilitation Act. *Id.* Finally, Plaintiffs allege in Count X that Defendants Hallett and Herro violated Plaintiff Richard Glover's right to be free from conspiracy. *Id.* at PageID.768. The Court addresses each allegation below.

### a. Count III alleges that Defendant Hallett retaliated against Plaintiff Richard Glover for exercising his First Amendment rights.

In Count III, Plaintiff Richard Glover alleges that Hallett, including MDOC Defendants not addressed in this order, was aware that he was engaged in the protected conduct of filing of grievances. Plaintiff further alleges that Hallett treated him inappropriately as retaliation for filing grievances against various prison staff. ECF No.

7

29, PageID.673. Specifically, Plaintiff alleges that Hallett sexually assaulted him during a medical examination and refused to provide him treatment for his serious medical needs. *Id*.

"A retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

Here, it is not disputed that Plaintiff engaged in protected conduct when he filed grievances. In general, prisoners must exhaust their administrative remedies before being able to file in court. "A consistent line of Supreme Court precedent indicates that prisoners retain a right to access the courts and that prison management cannot interfere with that right." *Thaddeus-X*, 175 F.3d at 396.

But Plaintiff's claim does not sufficiently state a causal connection between elements one and two. *See Thaddeus-X*, 175 F.3d at 394. Although Plaintiff alleges that Hallett conducted a rectal exam after Plaintiff Tina Glover had made complaints to MDOC medical personnel in Lansing, Plaintiff has not made allegations suggesting that Defendant Hallett was aware that his had happened. *See* ECF No. 29,

PageID.654. It is not clear from the complaint that Defendant Hallett subjected Plaintiff Richard Glover to a rectal examination because she was retaliating against Plaintiff Tina Glover for filing grievances. Thus, this claim does not establish a causal connection between the alleged adverse action and Plaintiff's exercise of a protected conduct. For this reason, Plaintiff fails to state a viable claim and Count III as to Defendant Hallett must be dismissed.

> **b. Count IV alleges that Defendants Hallett and Wright's deliberate indifference to his serious medical needs violated Plaintiff Richard Glover's Eighth Amendment rights.**

In Count IV, Plaintiff Richard Glover alleges that he has an established right to be free from deliberate indifference to his serious medical needs. ECF No. 29, PageID.675. Plaintiff further alleges that as medical providers, Hallett and Wright violated his Eighth Amendment rights by failing to provide adequate medical treatment as prescribed by Henry Ford Hospital after he suffered injuries from his fall. Plaintiff further alleges that he lacked adequate medical attention for his serious medical needs. *Id.* at PageID.676.

When prison inmates allege that prison officials failed to attend to their serious medical needs, they must establish two showings. First, the objective component requires a plaintiff to show that "the medical need at issue is sufficiently serious." *Alspaugh v. McConnell*, 643 F.3d 162, 169

(6th Cir. 2011) (citing *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004)). Second, the subjective component requires a showing that "prison officials have a sufficiently culpable state of mind in denying medical care." *Id*. Courts also distinguish "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Id*. (citing *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976)). Where the plaintiff alleges that the medical care was inadequate, "federal courts are generally reluctant to second guess medical judgments." *Id*.

Here, Plaintiff alleges that his medical treatment was inadequate. He acknowledges in the complaint that Hallett provided him "the appropriate medical detail for a bottom bunk, a wooden cane, a wheelchair, extra towels, ice and medicine." ECF No. 29, PageID.651. He also alleges that, in a subsequent examination, Hallett also conducted a rectal examination as she deemed appropriate based on Plaintiff's subjective symptoms but that Plaintiff says injured him. Plaintiff's chief complaint is that Hallett and Wright "refused to permit [Plaintiff] the muscle relaxer prescribed from the hospital stating that he did not need it." *Id*. As this is a claim related to the adequacy of medical treatment provided by Hallett and Wright, the Court will not "second guess medical

judgments." *See Westlake*, 537 F.2d at 860 n.5. Count IV as to Defendants Hallett and Wright is dismissed.

### c. Count V alleges that Defendant Hallett's medical examination violated Plaintiff Richard Glover's Eighth Amendment right to be free from cruel and unusual punishment.

In Count V, Plaintiff Richard Glover alleges that Hallett committed sexual assault against him by conducting a rectal exam "without consent and without a medical basis." ECF No. 29, PageID.678. Plaintiff alleges that Hallett's actions caused him to "bleed and experience pain in his anus and well as extreme mental distress from the violation." *Id*. As a result of the rectal examination, Plaintiff was taken to the hospital, where—it is alleged—medical staff "found evidence of sexual assault but the MDOC denied their finding." *Id*. at PageID.655. After Plaintiff made a complaint that he was sexually assaulted, the hospital notified Michigan State Police. But Plaintiff went on to state that "a nurse told [Plaintiff] that the MDOC was sweeping it under the rug." *Id*.

In *Hudson v. McMillian,* the Supreme Court established a framework for analyzing a violation of the Cruel and Unusual Punishments Clause of the Eighth Amendment. 503 U.S. 1, 4 (1992). *Hudson* considered whether an inmate's allegation that prison officials beat him during his transfer to administrative segregation stated a

11

viable Eighth Amendment claim because the inmate did not suffer a "serious injury." *Id*. The Court outlined a two-step inquiry: (1) a "subjective inquiry into whether prison staff acted 'with a sufficiently culpable state of mind'"; and (2) an "objective component" that asked whether the "alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Id*. at 8. Regarding the subjective component, the Court stressed that the "unnecessary and wanton infliction of pain...constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Id*. at 5 (citing *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). *Hudson* also explained that the objective component "is contextual and responsive to 'contemporary standards of decency.'" *Id*. at 8 (quoting *Estelle*, 429 U.S. 429, 103)).

The Sixth Circuit has clarified *Hudson* and stated that "[t]he Eighth Amendment prohibition on cruel and unusual punishment protects prisoners from the unnecessary and wanton infliction of pain." *Rafferty v. Trumbull County, Ohio*, 915 F.3d 1087, 1093-94 (citing *Villegas v. Metro Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013)). The Supreme Court has explained that "[a]mong 'unnecessary and wanton' inflictions of pain are those that are 'totally without penological justification.'" *Rhodes v. Chapman*, 452 U.S. 337, 346, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981).

12

Here, Plaintiff Richard Glover's allegations of cruel and unusual punishment are in the context of conduct which he describes as a sexual assault. "Federal courts have long held that sexual abuse is sufficiently serious to violate the Eighth Amendment." *Rafferty*, 915 F.3d at 1095. *Wood v. Beauclair*, an out-of-circuit case, provides courts with a framework for assessing sexual assault claims that violate a prisoner's Eighth Amendment right to be free from cruel and unusual punishment. 692 F.3d 1041, 1050 (9th Cir. 2012). There, the court contrasted sexual assault cases with Eighth Amendment excessive force cases resulting from prison officials' efforts to maintain or restore discipline. *Id*. The court acknowledged that in latter circumstances, "prison officials must make 'decisions in haste, under pressure, and frequently without the luxury of a second chance.'" *Id*. at 1049-50 (quoting *Hudson*, 503 U.S. at 6). But when prison officials are accused of engaging in sexual assault for their own gratification or to humiliate or degrade inmates, those same concerns are not present. *Id*. Thus, *Wood* stands for the proposition that sexual contact between a prisoner and a prison official serves no legitimate penological purpose. *See id*. And when there is no legitimate penological purpose, courts presume "malicious and sadistic intent." *Id*. at 1050 (citations omitted).

The Ninth Circuit in *Bearchild v. Cobban*, interpreting both *Wood* and *Hudson*, provided a helpful analysis. 947 F.3d 1130 (9th Cir. 2020).

There, the court of appeals held that when the allegation is that a prison official's conduct began as an invasive procedure that served a legitimate penological purpose, "the prisoner must show that the official's conduct exceeded the scope of what was required to satisfy whatever institutional concern justified the initiation of the procedure." *Id*. at 1140. The court also considered a prisoner's sexual assault claim within the framework of an Eighth Amendment excessive force claim. *Id*. The plaintiff accused a prison official of abusing his position of authority "by converting a routine pat-down search into a humiliating and abusive sexual assault." *Id*. A group of prisoners were walking from their housing unit to a class located in a different part of the prison. Along the way, guards stopped some of the inmates for a routine pat-down. The prisoner plaintiff alleged that the "pat-down lasted about five minutes and involved rubbing, stroking, and squeezing, and groping in intimate areas." *Id*. at 1135. He then claimed that the prison official "ordered him to pull his waistband away from his body, stared at his penis, and asked, 'Is that all of you?'" *Id*. at 1135. While this interaction elicited laughter from the prison officials, the plaintiff alleged that fellow inmates verbally contested the impropriety of the official's behavior.

The court in *Bearchild* made three clarifications regarding Eighth Amendment claims arising from sexual assault. First, "sexual assault

14

serves no valid penological purpose." *Id*. at 1144. Second, "where an inmate can prove that a prison guard committed sexual assault, we presume the guard acted maliciously and sadistically for the purpose of causing harm." *Id*. (citing *Wood*, 692 F.3d at 1050). This satisfies the Eighth Amendment subjective component. Finally, "an inmate need not prove that an injury resulted from sexual assault in order to maintain an excessive force claim." *Id*. "Any sexual assault is objectively 'repugnant to the conscience of mankind' and therefore not *de minimis* for Eighth Amendment purposes." *Id*. (citing *Hudson*, 503 U.S. at 10).

In light of the authorities above, taking his allegations in the light most favorable to him, Plaintiff Richard Glover has stated a claim that Defendant Hallett violated his Eighth Amendment right to be free from cruel and unusual punishment. Plaintiff has satisfied the objective and subjective components of his Eighth Amendment claim. Defendant argues that she had a legitimate medical basis for conducting a rectal examination because Plaintiff had complained of problems with defecating and had experienced symptoms consistent with Cauda Equina Syndrome.[3]

---

[3] This explanation is not contained or referenced in Plaintiff's complaint. While clearly relevant to the factual question of Defendant Hallett's intent, this explanation may not be considered at the motion to dismiss stage, because the Court must take the allegations as true.

But Plaintiff's allegations raise the plausible inference that the examination exceeded the scope of the penological interest. *See Wood*, 692 F.3d at 1050. During and after the examination, Plaintiff alleges that he "experienced pain and blood from his anus." ECF No. 29, PageID.654. Furthermore, "[Defendant Hallett's] abuse has caused him extreme mental and emotional distress." *Id*. Plaintiff was taken to the hospital for an evaluation of his rectal injuries and he alleges that "the hospital found evidence of sexual assault" and "the hospital called Michigan State Police to investigate the claim." *Id*. at 655.

Taking these allegations as true, such injuries suggest that the medical examination was not consistent with a routine rectal examination. And to the extent the exam went beyond such a routine procedure, to the point where Plaintiff suffered injuries as a result of the examination, the complaint makes a plausible claim that the conduct at issue exceeded the scope of the penological purpose. Instead, if proven, Plaintiff's injuries would allow a reasonable inference that Defendant Hallett acted with the purpose of sexually harassing and humiliating Plaintiff, in violation of his Eighth Amendment rights. And because Plaintiff has sufficiently alleged that he was sexually assaulted during his examination, if true such an allegation would show that Defendant Hallett acted maliciously and sadistically for the purpose of

causing Plaintiff harm. *See Rafferty*, 915 F.3d at 1096. The subjective component is therefore satisfied. *See Farmer*, 511 U.S. at 834.

As such, Plaintiff's claim as to Count V survives the motion to dismiss.

### d. Count VII alleges that Defendants Hallett and Wright discriminated against Plaintiff Richard Glover because of his disability.

Plaintiff Richard Glover alleges that Defendants Hallett and Wright violated the Americans with Disabilities Act and Rehabilitation Act by discriminating against him on the basis of his disability. ECF No. 29, PageID.680-81.

As a threshold matter, Plaintiff has sued Wright in her official capacity as an employee of Corizon. *Id*. at PageID.619-20 ("Defendant Wright is being sued in her official capacity for Plaintiff's claims under the ADA."). Because Wright is being sued in her official capacity, this claim against Wright is instead a claim against her employer, Corizon Health. Corizon Health is a medical provider contracted to serve incarcerated persons. And because Corizon Health is a private entity providing medical care to incarcerated persons, it is exercising powers which are "traditionally exclusively reserved to the state." *Street v. Corrections Corp. of America*, 102 F.3d 810, 814 (6th Cir. 1996). It is therefore acting under color of state law under the "public function test." Id. at 814. (citations omitted). Courts use the "public function

17

test" "for determining whether private conduct is fairly attributable to the state." *Id.* (quoting *Ellison v. Garbarino*, 48 F.3d 192, 195 (6th Cir. 1995)).

As such, a suit against Wright in her official capacity is instead a suit against the state, acting through Corizon Health. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."). So, for Plaintiff to state a § 1983 discrimination claim against Corizon Health, he must show "that a policy or well-settled custom of the company was the 'moving force' behind the alleged deprivation" of his rights. *Braswell v. Corrections Corp. of America*, 419 Fed. App'x 622, 627 (6th Cir. 2011). Because Plaintiff has not made allegations relating to Corizon Health's "policy or well-settled custom," this claim as it pertains to Wright is dismissed for failure to state a claim. *See id.*

Turning to the remaining Defendants, Plaintiff Glover alleges that Hallett has discriminated against him on the basis of his disability. Specifically, Plaintiff alleges that Hallett has refused "to allow him to use the elevator in order to attend his classes on the second floor of the school" and "to sit at the handicapped table in the chow hall." ECF No. 29, PageID.681. In making this claim, Plaintiff states that he is disabled as a result of his fall, seizures, and injury. *Id.*

18

Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The Supreme Court has determined that the protections of Title II of the ADA and the Rehabilitation Act extend to inmates in state prisons. *Pennsylvania Dep't of Corrections v. Yeskey*, 524 U.S. 206 (1998).

In order to make a prima facie showing of discrimination in violation of the ADA, a plaintiff must prove that he "(1) has a disability; (2) is otherwise qualified; and (3) is being excluded from participation in, being denied benefits of, or being subject to discrimination under, the program solely because of the plaintiff's disability." *Dillery v. City of Sandusky*, 398 F.3d 562, 567 (6th Cir. 2005) (citations omitted).

Here, Plaintiff has not properly plead a claim under Title II of the ADA. Although Plaintiff has alleged that he has suffered from various medical conditions, it is not clear that he has made a prima facie showing of discrimination in violation of the ADA. First, Plaintiff has not properly plead that he is disabled for the purposes of a Title II ADA discrimination claim. Moreover, Plaintiff's allegations of deprivation relate to the adequacy of his medical treatment. For example, Plaintiff alleges that Hallett violated the ADA by failing to provide medical

19

clearance allowing him to use elevators and to sit at handicapped-designated areas. But the Sixth Circuit has recognized that "neither the [Rehabilitation Act] nor the ADA provide a cause of action for medical malpractice." *Baldridge-El v. Gundy*, 238 F.3d 419, at *2 (6th Cir. 2000). Several other federal courts have similarly held that medical decisions "do not ordinarily fall within the scope of the ADA or the Rehabilitation Act." *Fitzgerald v. Correction Corp. of America*, 403 F.3d 1134, 1144 (10th Cir. 2005); *see also Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996); *Stevenson v. Pramstaller*, 2009 WL 804748, at *3 (E.D. Mich. 2009). Accordingly, Count VII is dismissed.

### e. Count X alleges that Defendants Hallett and Herro conspired to deprive Plaintiff Richard Glover of his constitutional rights.

In Count X, Plaintiff Richard Glover alleges that Hallett and Herro "agreed to retaliate against Plaintiffs for their engagement in protected conduct" by sexually assaulting him, in violation of his "clearly established right to be free from conspiracy to violate his constitutional right to be free from cruel and unusual punishment." ECF No. 29, PageID.683-84. The extent of the allegations of conspiracy comprises of Hallett bringing Herro "in the room to watch as she committed the assault" while ordering a corrections officer to "block access to the door during the act." *Id.* at 684.

A civil conspiracy is "an agreement between two or more persons to injure another by unlawful action." *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985). A plaintiff must establish that "there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant." *Id*. But the intra-corporate conspiracy theory serves to bar such claims where members of the same collective entity are alleged to have engaged in a conspiracy. *Hull v. Cuyahoga Valley Joint Vocational School Dist. Bd. of Educ.*, 926 F.2d 505, 509 (6th Cir. 1991). This is because "a corporation cannot conspire with its own agents or employees." *Id*. An exception to the intra-corporate doctrine may be shown when the members of the same collective entity act outside the scope of their employment. *Barrow v. City of Hillview, Ky.*, 2017 WL 6396136, at *5 (6th Cir. 2017). And simply suing an official in his individual capacity does not establish that such members were acting outside the scope of their employment. *Jackson v. City of Columbus*, 194 F.3d 737, 753 (6th Cir. 1999).

Here, the intra-corporate doctrine bars Plaintiff's claim because Hallett and Herro are members of the same entity, Corizon Health. Members of the same entity may not conspire with each other. *See Hull*, 926 F.2d at 509. Furthermore, Plaintiff has not properly alleged that

the Defendants were not acting in the scope of their employment because they were conducting a rectal exam with a legitimate medical basis. *See Barrow*, 2017 WL 6396136, at *5. Although Plaintiff has sued Hallett and Herro in their individual capacities, such a pleading by itself is not sufficient to negate the application of the intra-corporate doctrine. *See Jackson*, 194 F.3d at 753.

Therefore, Count X is dismissed because it fails to state a claim upon which relief can be granted.

## CONCLUSION

For all the reasons stated above, Defendants' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**.[4] Count V against Dr. Hallett survives dismissal.

The Court held a hearing on Plaintiffs' Temporary Restraining Order on February 13, 2020. As a result of that hearing, the Court denied the TRO and then ordered Plaintiffs to amend their complaint in order to address its deficiencies. ECF No. 28. Because Plaintiffs were afforded an opportunity to amend their complaint, but some of the claims in the

---

[4] Counts not addressed in this Order do not pertain to the Corizon Defendants and are instead resolved in a separate Order. *See* ECF No. 38.

22

Amended Complaint persist in failing to state a claim, the claims dismissed in this Order are **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

Dated: March 15, 2021          s/Terrence G. Berg
                               TERRENCE G. BERG
                               UNITED STATES DISTRICT JUDGE

## Certificate of Service

I hereby certify that this Order was electronically filed, and the parties and/or counsel of record were served on March 15, 2021.

s/A. Chubb
Case Manager

23