UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **RICHARD GLOVER, et al.,**<br><br>Plaintiffs,<br><br>vs.<br><br>**MONICA RIVAS, et al.,**<br><br>Defendants. | 2:19-CV-13406-TGB-MJH<br><br><br>**ORDER DENYING PLAINTIFF'S FOURTH EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION (ECF. NO. 86)** |

This matter is before the Court on Plaintiff Richard Glover's fourth emergency motion for a temporary restraining order ("TRO") and preliminary injunction. ECF No. 86. This motion arises out of a civil rights action pending before the Court in which Plaintiffs seek relief under 42 U.S.C. § 1983 against over 50 Michigan Department of Corrections ("MDOC") employees and Corizon Health Care ("Corizon") employees, asserting claims of First Amendment retaliation and denial of access to courts, Fourth Amendment search and seizure violations, Eighth Amendment cruel and unusual punishment and deliberate indifference, ADA and Rehabilitation Act violations, and Fourteenth Amendment equal protection violations.

1

Here, Plaintiff requests injunctive relief to bar Defendants from engaging in ten forms of conduct. Plaintiff asks the Court to enjoin Defendants from: (1) retaliating against Plaintiffs in this action; (2) denying or interfering with Plaintiffs' grievance filing; (3) interfering with Plaintiff's ability to communicate with his wife (a co-Plaintiff in this action); (4) interfering with Plaintiff's ability to communicate with his counsel; (5) reading or removing Plaintiff's legal documents; (6) interfering with Plaintiffs' ability to prosecute their case; (7) subjecting Plaintiff to unwarranted strip searches; (8) issuing Plaintiff unwarranted insolence discipline tickets; (9) placing Plaintiff in segregation for invalid reasons; and (10) transferring Plaintiff from the Richard A. Handlon Correctional Facility. Plaintiff's Fourth Emergency Motion for a Temporary Restraining Order and Preliminary Injunction, ECF No. 86, PageID.1568–69. For the reasons explained below, the emergency motion for a temporary restraining order is **DENIED** as moot.

## I. BACKGROUND

As is evident from the caption of Plaintiff's motion, this is not the first time Plaintiff has sought emergency relief. Plaintiff previously filed his third emergency motion for a TRO and preliminary injunction on February 18, 2022. ECF No. 67. In that motion, Plaintiff alleged that MDOC placed him in segregation for over two months due to an "unsubstantiated trumped-up assault charge." *Id.* at PageID.1357. On May 25, 2022, this Court denied Plaintiff's motion for a TRO and

2

preliminary injunction as moot after Plaintiff was removed from segregation and transferred to the Richard A. Handlon Correctional Facility ("RHCF"), a Level II Security facility, on March 10, 2022. ECF No. 82, PageID.1481–82. The Court also reviewed video footage of the alleged assault and found that it did not corroborate Plaintiff's "version of the facts" leading to his segregation. *Id.* at PageID.1481.

Plaintiff is currently incarcerated at the Carson City Correctional Facility ("CCCF") in Carson City, Michigan. Defendants' Response in Opposition to Plaintiff's Emergency Motion, ECF No. 87, PageID.1592. The circumstances surrounding Plaintiff's present emergency motion involve conduct that occurred at RHCF prior to his transfer to CCCF.

Plaintiff alleges that while housed at RHCF in June 2022, he filed grievances against Warden Melinda Braman, Correctional Officer Jay Sutton, and Correctional Officer Nicholas Lake. ECF No. 86, PageID.1563. On July 19, 2022, Plaintiff received a response from the RHCF Grievance Coordinator, which triggered the 10-day time period for Plaintiff to file a reply. *Id.* at PageID.1563. But despite timely requesting an appeal reply form from the Grievance Administrator's Office and the Warden's Office, Plaintiff claims that he was not given the proper form. *Id.* at PageID.1563–64.

Because RHCF staff failed to provide Plaintiff with the appeals form, Plaintiff filed a second grievance on July 31, 2022. *Id.* at PageID.1564. On August 7, 2022, Plaintiff wrote a letter to RHCF staff

3

alleging that they failed to provide him with a notice of receipt of the July 31 grievance. *Id.* at PageID.1565.

On August 9, 2022, Plaintiff alleges that Correctional Officer Lake wrote Plaintiff an "unfounded and unwarranted Insolence Ticket." *Id.* Plaintiff received the disciplinary ticket the next day on August 10, 2022. *Id.* at PageID.1566. On the morning of August 11, 2022, Plaintiff claims that Correctional Officers Franks and Ariaf-Summer strip-searched him. *Id.* Plaintiff specifically alleges that when he asked Correctional Officer Franks why they were searching him, Franks responded, "If I told you[,] I would have to kill you." *Id.* at PageID.1566. Later that morning, Plaintiff alleges that Correctional Officer Schafer searched Plaintiff's cell and removed legal documents related to this case. *Id.* According to Plaintiff, he was then placed in segregation without explanation. *Id.*

Meanwhile, after RHCF cancelled a scheduled call with Plaintiff and upon learning of Plaintiff's strip search, cell search, and segregation, Plaintiff's counsel immediately contacted Defendants' counsel to address the situation. *Id.* at PageID.1566–67. Between August 11 and August 15, 2022, the parties' counsel exchanged emails on Plaintiff's allegations and Plaintiff's intent to file a motion for a TRO. *Id.* at PageID.1567.

On August 16, 2022, Plaintiff explains that he was transferred to CCCF, placed in a Level II Security unit, and given a cell on an upper

4

floor with a top bunk in violation of one of this Court's orders.[1] *Id.* Plaintiff also claims that his transfer to CCCF enhances his security level and places him four hours away from his family. *Id.* at PageID.1568. Furthermore, Plaintiff claims that Defendants did not return his personal belongings, including legal documents and research, when he was transferred to CCCF. *Id.* at PageID.1567. Lastly, Plaintiff generally alleges that Defendants have continued "to harass, discipline, and retaliate against Plaintiff." *Id.* at PageID.1568.

Defendants tell a different version of events. In opposing the relief sought, Defendants claim that Plaintiff was segregated and transferred not in retaliation for filing grievances, but because his conduct at RHCF presented "safety and security concerns." ECF No. 87, PageID.1588. Defendants concede that Plaintiff received an insolence ticket on August 10, 2022, but explained that Plaintiff was never sanctioned for insolence because the ticket was "dismissed for administrative reasons." *Id.* at PageID.1595; *see also* Exh. D, ECF No. 87-5 (attaching copy of Plaintiff's insolence ticket showing MDOC's "findings" that the ticket was "dismissed").

---

[1] Plaintiff's Motion does not specify the Order to which Plaintiff refers, but the Court's May 25, 2022 Order denying Plaintiff's Motion for TRO and Preliminary Injunction placed Defendants on notice that they must not disregard Plaintiff's accommodations requests. ECF No. 82, PageID.1482 n.2.

5

Defendants allege that Plaintiff was placed in segregation on August 11, 2022 because on that day, he sent a kite to RHCF Warden Braman "detailing the operations of the facility's sally port—a secured entry and exit of the facility." ECF No. 87, PageID.1595. Specifically, Warden Braman attests that Plaintiff's kite was concerning to her "because a prisoner with detailed information about how the sallyport operates is a safety and security concern to the staff, other prisoners, and community due to the possibility of escape." Affidavit of Melinda K. Braman, ECF No. 87-2, PageID.1603. Defendants claim that they strip-searched Plaintiff, searched Plaintiff's cell, and segregated Plaintiff to further investigate the kite and found additional documents in Plaintiff's possession that corroborated their safety concerns. ECF No. 87, PageID.1595–96. Defendants admit that they cancelled a scheduled call between Plaintiff and his counsel on August 11 because of their kite investigation, but emphasize that they did not do so to retaliate against Plaintiff for filing grievances in June and July 2022. *Id.* at PageID.1596.

Shortly after August 11, Defendants allege that while inspecting the sallyport area referenced in Plaintiff's kite, Defendants found an inmate "known to associate with Richard Glover . . . hiding in an apparent attempt to escape." *Id.* Having further substantiated the alleged security risks Plaintiff presented at RHCF, Warden Braman sought to transfer Plaintiff to CCCF. ECF No. 87-2, PageID.1604–05. Warden Braman also claims that she "ascertained that Mr. Glover was

6

ready to be discharged" from RHCF's residential treatment program into out-patient therapy at CCCF before confirming the transfer. *Id.*

Defendants acknowledge that initially, Plaintiff was not given a bottom bunk cell CCCF, but maintain that an upper bunk was still "in accordance with [Plaintiff's] medical details," which did not note any housing accommodation restrictions when he was transferred. ECF No. 87, PageID.1596; *see also* Exh. F, ECF No. 87-7, PageID.1661 (attaching Plaintiff's "Medical Detail Special Accommodations" from August 11, 2022 showing "no restrictions" on housing).

On August 25, 2022, however, Plaintiff received a new Medical Detail Special Accommodation requiring a bottom bunk, ground floor room with no stair steps, and elevator accommodations. Exh. G, ECF No. 87-8, PageID.1663. Defendants claim that Plaintiff's current cell conforms with these accommodations. ECF No. 87, PageID.1597. Defendants also alleged that Plaintiff "signed a receipt indicating that he received his property [from RHCF] on August 16, 2022" before being transferred. *Id.*; *see also* Exh. H, ECF No. 87-9, PageID.1665–66 (showing Plaintiff's signature "indicat[ing] that the property receipt is correct at the time property [was] returned to [Plaintiff]"). Lastly, Defendants claim that Plaintiff's security level was not increased, as he remains in a Level II Security unit at CCCF.[2] ECF No. 87-2, PageID.1605.

---

[2] The MDOC Offender Tracking Information System ("OTIS") shows Plaintiff at a Security Level I unit in CCCF. *See* Biographical

Plaintiff did not file a reply brief to rebut Defendants' opposition.

## II. LEGAL STANDARD

In general, "a prisoner's claim for declaratory and injunctive relief against certain prison officials [becomes] moot once the prisoner [is] transferred from the prison of which he complained to a different facility." *Henderson v. Martin*, 73 F. App'x 115, 117 (6th Cir. 2003) (citing *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996)). But even setting aside mootness concerns, a plaintiff has the burden of establishing their entitlement to a preliminary injunction as "an extraordinary remedy" that is "never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). Before granting injunctive relief, a court must weigh:

> (1) whether the movant has a "strong" likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a preliminary injunction.

*Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000) (quoting *McPherson v. Mich. High Sch. Athletic Ass'n*, 119 F.3d 453, 459 (6th Cir. 1997)).

---

Information: Richard Desmond Glover, https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=405155 (last visited Oct. 3, 2022).

### III. DISCUSSION

Plaintiff has failed to meet his burden to demonstrate entitlement to extraordinary equitable relief. First, it is undisputed that Plaintiff is no longer incarcerated at RHCF, the institution against which he seeks injunctive relief in his emergency motion. As such, Plaintiff's claims for injunctive relief, which arose from alleged misconduct by RHCF employees, must be denied as moot. *See Kensu*, 87 F.3d at 175; *Berryman v. Granholm*, 343 F. App'x 1, 5 (6th Cir. 2009).

Second, to the extent that Plaintiff seeks specific injunctive relief to reverse his transfer to CCCF, Plaintiff cannot succeed on the merits of such claims. The Sixth Circuit has made clear that "a prisoner has no inherent constitutional right to be confined in a particular prison or to be held in a specific security classification." *Nunez v. FCI Elkton*, 32 F. App'x 724, 725 (6th Cir. 2002). Relatedly, even assuming his claims were not moot, Plaintiff's request for injunctive relief related to his legal documents must fail because Plaintiff has not rebutted Defendants' evidence that Plaintiff acknowledged receipt of his personal belongings from RHCF, including his "legal papers" and "legal footlocker." ECF No. 87-9, PageID.1665. And in general, Plaintiff has not shown a credible likelihood of future harm that would warrant the injunctive relief he seeks. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). Therefore, Plaintiff's fourth emergency motion for a TRO and preliminary injunction must be **DENIED**.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's request for a temporary restraining order and preliminary injunction is **DENIED** as moot.

**IT IS SO ORDERED.**

Dated: October 3, 2022     s/Terrence G. Berg
                                                        TERRENCE G. BERG
                                                        UNITED STATES DISTRICT JUDGE