UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **RICHARD GLOVER, et al.,** | **2:19-CV-13406-TGB-MJH** |
| Plaintiffs, | HON. TERRENCE G. BERG |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART MICHIGAN DEPARTMENT OF CORRECTIONS DEFENDANTS' MOTION FOR SUMMARY JUDGMENT SOLELY ON THE BASIS OF EXHAUSTION (ECF NO. 108) AND DENYING AS MOOT THEIR MOTION TO STAY DISCOVERY (ECF NO. 109)** |
| **MONICA RIVAS, et al.,** | |
| Defendants. | |

Presently before the Court is Michigan Department of Corrections Defendants' ("MDOC Defendants") Motion for Summary Judgment Solely on the Basis of Exhaustion under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). ECF No. 108. MDOC Defendants concurrently filed a Motion to Stay Discovery pending resolution of the Motion for Summary Judgment. ECF No. 109.

For the following reasons, MDOC Defendants' Motion for Summary Judgment (ECF No. 108) will be **GRANTED IN PART** and **DENIED IN PART** and the Motion to Stay Discovery (ECF No. 109) will be **DENIED AS MOOT**.

## I.    BACKGROUND

Plaintiff Richard Glover was a prisoner of the Michigan Department of Corrections ("MDOC") at the G. Robert Cotton Correctional Facility ("JCF"). *Amended Complaint*, ECF No. 29, ¶¶ 7–8. Glover was discharged from JFC on February 7, 2025, according to Michigan's Offender Tracking Information System.

On December 16, 2019, Plaintiff, his wife Tina Glover, and his minor son R.G., filed a Complaint (ECF No. 1) against 46 individuals employed by the MDOC and Corizon Health, Inc., the prison system's healthcare provider, which they amended on February 24, 2020 (ECF No. 29). Some claims were dismissed (*see* ECF No. 57), but the following claims remain:

(I)    Unreasonable search and seizure of Ms. Glover and her son prior to a visit at JCF on November 18, 2016 by MDOC Defendants in violation of the Fourth Amendment;

(II)   Retaliation by MDOC Defendants against Ms. Glover and her son in violation of the First Amendment;

(III)  Retaliation by MDOC Defendants against Mr. Glover in violation of the First Amendment;

(IV)   Deliberate indifference to Mr. Glover's medical needs by MDOC Defendants in violation of the Eighth Amendment; and,

(V)    Cruel and unusual punishment of Mr. Glover in violation of the Eighth Amendment against Corizon Defendant Dr. Hallet.

The present motion seeks summary judgment only as to some of Plaintiff Richard Glover's claims against some of the MDOC Defendants.

Specifically, it addresses only Counts III-Retaliation and IV-Deliberate Indifference against Defendants Paul Anderson, Karina Blair, Crystal Brown, Sharita Davidson, Ne'tesha DeMyers, Devin Freymuth, Gregory Gordon, Gordon Hill, William Hokanson, Michael Kennedy, James King, Tiffani Kisor, Sirena Landfair, William Marsh, Christine McCumber-Hemry, Noah Nagy, Michelle Parsons, Dennis Reynolds, Monica Rivas, Russell Rurka, and Joel Salinas.[1]

As to Count III, the retaliation started according to Glover on November 18, 2016, when his wife and baby son allegedly experienced harassment, unlawful strip searches, groping, and other negative treatment by MDOC personnel when they were attempting to visit him. ECF No. 29, ¶¶ 60–67. Glover and his wife attempted to complain, and Glover eventually filed a grievance about the incident. *Id*. at ¶¶ 70–75. What followed, according to the lengthy Amended Complaint, was years of retaliation in the form of harassment, threats, abuse, and neglect. Plaintiff claims that filing grievances about the retaliation and harassment begot even more intense retaliation and harassment. For instance, Glover alleges he was transferred to a facility in the Upper

---

[1] Defendants Howard, Knapp, Lindsey, Sierminski, Smith, and Thelen, who are not a part of this motion, did not waive the defense of exhaustion and reserved the right to resolve the issue of exhaustion in an evidentiary hearing prior to trial. *See* ECF No. 108, PageID.2451 n.1. Defendant Delossantos alleged he does not have a claim against him that is subject to exhaustion. *Id*.

Peninsula far away from his family, lost phone privileges, and was sent to segregation, all in retaliation for filing grievances. *Id.* at ¶¶ 83–91.

As to Count IV, Glover further alleges that prison officials violated his Eighth Amendment rights by being deliberately indifferent to his serious medical conditions. For example, he alleges that despite having authorization from a hospital for certain medical privileges, prison officials retaliated by taking away his medication, wheelchair, walker, and cane without an appropriate basis. *See, e.g.*, *id.* at PageID.653–55.

## II.   LEGAL STANDARD

Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(a). Courts on summary judgment must not "weigh the evidence and determine the truth of the matter" but simply "determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Courts need only consider the cited materials but may consider other evidence in the record. Fed. R. Civ. Proc. 56(c)(3).

The failure to exhaust administrative remedies is an affirmative defense under the Prison Litigation Reform Act ("PLRA"), *Jones v. Bock*, 549 U.S. 199, 216 (2007), which the defendant has the "burden to plead and prove by a preponderance of the evidence," *Lee v. Willey*, 789 F.3d 637, 677 (6th Cir. 2015). As a result, the defendant's burden on summary judgment based on exhaustion is "higher in that it must show that the

record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Surles v. Andison,* 678 F.3d 452, 455–56 (6th Cir. 2012) (quotations and citations omitted); *see also Johannes v. Washington*, No. 14-11691, 2016 WL 1253266, at *10 (E.D. Mich. Mar. 31, 2016)(Michelson, J.) ("On summary judgment . . . the defendant has the burden of convincing the court that no reasonable jury could find that the plaintiff exhausted his claims.") (citing to *Surles,* 678 F.3d at 455–56).

In making that determination, the Court must view the evidence in the light most favorable to the nonmovant, though this duty "does not require or permit the court to accept mere allegations that are not supported by factual evidence." *Chappell v. City of Cleveland*, 585 F.3d 901, 906 (6th Cir. 2009); *see also Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

Summary judgment based on a failure to exhaust administrative remedies is not on the merits and thus requires dismissal without prejudice. *Adams v. Smith*, 166 F. App'x 201, 204 (6th Cir. 2006).

## III. DISCUSSION

## A. Prison Litigation Reform Act & MDOC Procedures

In order to "allow prison officials 'a fair opportunity' to address grievances on the merits, to correct prison errors that can and should be corrected and to create an administrative record for those disputes that eventually end up in court," *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010) (citing to *Woodford v. Ngo*, 548 U.S. 81, 90 (2006)), the Prison Litigation Reform Act ("PLRA") requires that,

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a); *Jones*, 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the [PLRA] and that unexhausted claims cannot be brought in court.").

To exhaust administrative remedies, an incarcerated person must take "advantage of each step the prison holds out for resolving the claim internally" and "follow[ ] the 'critical procedural rules' of the prison's grievance process." *Reed-Bey*, 603 F.3d at 324 (citing *Woodford*, 548 U.S. at 94–95); *see also Bailey v. Michigan Dep't of Corr.*, No. 19-13442, 2020 WL 4934314, at *2 (E.D. Mich. Aug. 24, 2020)(Roberts, J.) ("An untimely or otherwise improper grievance does not satisfy the PLRA exhaustion requirement."). "The level of detail necessary in a grievance

to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218.

MDOC Policy Directive 03.02.130 ("Prisoner/Parolee Grievances") sets forth the applicable three-step grievance procedures for prisoners in MDOC custody at the time relevant to this Complaint. *See* P.D. 03.02.130 (eff. date July 9, 2007), Ex. B, ECF No. 108-3, PageID.2511–19 (hereinafter "P.D. (2007)"); P.D. 03.02.130 (eff. date March 18, 2019), Ex. C, ECF No 108-4, 2521–28 (hereinafter "P.D. (2019)").

Before filing a grievance, a prisoner must first attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue. P.D. ¶ P (2007); P.D. ¶ Q (2019). If the issue is not resolved, the prisoner must then file a Step I grievance within five business days after the attempted resolution. P.D. ¶ P (2007); P.D. ¶ Q (2019). Information provided in the grievance is to be "limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included." P.D. ¶ R (2007); P.D. ¶ S (2019) (emphasis in original).

A grievance may be denied on the merits, or rejected based on a procedural issue without addressing its merits if, for instance, it is untimely, vague, or illegible, it contains multiple unrelated issues, raises "duplicative" issues, the grievant did not attempt to resolve the issue

prior to filing the grievance, or the grievant grieves the decision made in a misconduct hearing.[2] P.D. ¶¶ F–G (2007); P.D. ¶ J (2019).[3]

If the grievant is dissatisfied with the response received at Step I, the grievant may appeal it by filing a Step II grievance—but not by filing a new grievance regarding the rejection. P.D. ¶ I (2007); P.D. ¶ I (2019) Similarly, if the grievant is dissatisfied with the response received at Step II, the grievant may appeal it by filing a Step III grievance. P.D. ¶ FF (2007); P.D. ¶ HH (2019). To exhaust administrative remedies through the grievance process, a prisoner must pursue grievances through Step III of the grievance process. P.D. ¶ B (2007); P.D. ¶ C (2019).

But a grievance is unexhausted if it was explicitly rejected for a procedural reason, *see Vandiver v. Corr. Med. Servs., Inc.*, 326 F. App'x 885, 889 (6th Cir. 2009), unless: (1) prison officials disregarded the procedural defect and responded on the merits at each step, *Reed-Bey*, 603 F.3d at 326; (2) the grievance was improperly rejected, *Bailey*, 2020

---

[2] There is a different appeal process for such misconduct hearing decisions. *See* P.D. 03.03.105 ("Prisoner Discipline"); *see also Smith v. Pallas*, No. 18-1933, 2019 WL 7946345, at *3 (6th Cir. 2019) (citing to *Siggers v. Campbell*, 652 F.3d 681, 694 (6th Cir. 2011)) (noting that "the only avenue for challenging [major misconduct] reports is a hearing," including for allegations of retaliation); *but see Reynolds-Bey v. Harris-Spicer*, 428 Fed. App'x 493, 501 (6th Cir. 2011) ("As distinct from the outcomes of misconduct *hearings*, the filing of retaliatory misconduct *reports* is grievable under MDOC Policy Directive 03.02.130.").

[3] Prior to March 18, 2019, some of the procedural reasons for rejection were discretionary, P.D. ¶ G (2007), but they are now mandatory, P.D. ¶ J (2019).

8

WL 4934314, at *5; or (3) the grievance procedure was not "available" to prisoners, such as when it operates as a "dead end," is "so confusing that . . . no reasonable prisoner can . . . make sense of what it demands," or "prison administrators thwart[ed] inmates from taking advantage" of the procedure "through machination, misrepresentation, or intimidation," *Ross v. Blake*, 578 U.S. 632, 642–44 (2016).

## B. Failure to Pursue Claims Through Step III

Defendants attached Glover's Step III Grievance Report to the Motion, which tracks all the grievances Glover filed through Step III as of the filing of the Amended Complaint. Ex. D, ECF No. 108-5, PageID.2533–48. Based on this Step III Grievance Report, Defendants argue Plaintiff did not complete the three-step grievance process as to certain claims prior to filing his Amended Complaint, such that the following claims, described in Exhibit A, are unexhausted:

- Anderson (Count III) ¶¶162, 208
- Brown (Count IV) ¶¶171, 175, 183, 185, 265
- Davidson (Count IV) ¶¶187, 261
- Gordon (Count III) ¶¶94, 251
- Hill (Count III) ¶188
- Hokanson (Count III) ¶¶139–142, 188
- Kennedy (Count III) ¶153
- King (Count III) ¶158
- Kisor (Count III) ¶158

- Landfair (Count IV) ¶187[4]
- Nagy (Count III) ¶¶199, 207, 251
- Parsons (Count III) ¶¶143, 202, 251
- Rivas (Count III) ¶¶82, 129
- Rurka (Count III) ¶¶198–199, 251

Ex. A, ECF No. 108-2, PageID.2505–10.

Plaintiff does not deny or otherwise offer evidence to contradict Defendants' argument that these claims were only partially grieved through Step I or Step II, or not grieved at all. Neither does Plaintiff contend that administrative remedies for such claims were unavailable, *see Ross*, 578 U.S. at 642–44, or that further discovery would reveal grievances for these claims. As a result, those claims must be dismissed without prejudice for failure to exhaust administrative remedies. *See Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) ("While we recognize that plaintiff made some attempts to go through the prison's grievance procedures, we must dismiss plaintiff's complaint because he filed his federal complaint before allowing the administrative process to be completed.").

As Plaintiff contends, it is true that sometimes, dismissal for failure to exhaust may be "judicially uneconomical," given that a plaintiff who has been released from custody—like Glover—could "simply re-file" without being bound by the PLRA's exhaustion requirement. *See Cox v.*

---

[4] While Defendants included ¶ 174 as a claim that was not grieved through Step III, the Court disagrees, as explained below, as it relates to ¶ 167, for which a grievance was filed through Step III against Landfair.

*Mayer*, 332 F.3d 422, 426–27 (6th Cir. 2003); *see also Ball v. Evers*, No. 19-10315, 2021 WL 3164273, at *6 (E.D. Mich. July 27, 2021)(Lawson, J.) (noting that the PLRA does not preclude an action filed *after* a plaintiff was released from prison). But the Sixth Circuit warned against excusing the statutory duty to exhaust on that basis because it would not only "usurp the legislative function but also [ ] prevent potentially frivolous suits from meeting an administrative death (as the statute intended)." *Cox*, 332 F.3d at 427. Thus, the appellate court rejected the idea that "prisoners would know that, no longer confined at the time the courts addressed their case, their failure to exhaust could be excused." *Id.*

### C. Sufficiency of the Grieved Issues

Defendants also argue that some claims, which have admittedly been exhausted through Step III as to *some* Defendants, have not been exhausted as to some *other* Defendants, because of some defect in the way the Defendants were named in the grievance, or the way their misconduct was described. *See Vandiver v. Martin*, 48 F. App'x 517, 519 (6th Cir. 2002) ("The issues [a plaintiff] may raise, and the defendants he may name, in his lawsuit are limited to the specific issues raised, and the specific individuals mentioned, in his grievance.").

MDOC's policy states that information provided in the grievance must be "limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how)." P.D. ¶ R (2007); P.D. ¶ S (2019) (emphasis in original). But a grievance need not "allege a specific legal

11

theory or facts that correspond to all the required elements of a particular legal theory," and rather must give "fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint." *Burton v. Jones*, 321 F.3d 569, 575 (6th Cir. 2003), *abrogated on other grounds by Jones*, 549 U.S. at 205; *see also Spencer v. Bouchard*, 449 F.3d 721, 726 (6th Cir. 2006), *abrogated on other grounds by Jones*, 549 U.S. at 205 (noting that "[t]his relaxed standard" is "not a particularly strict one" and is "consistent with the general practice of liberally construing pro se prisoners' filings").

MDOC's policy also provides that a grievance must include the "[d]ates, times, places, and names of all those involved in the issue being grieved." P.D. ¶ R (2007); P.D. ¶ S (2019). While Defendants insist all individuals involved must be named in the *Step I* grievance, the Sixth Circuit noted that MDOC's policy is "unclear as to whether a prisoner must name each defendant in his first grievance or before the conclusion of the grievance process." *Coleman v. Rich*, No. 16-1263, 2016 WL 9650985, at *2 (6th Cir. 2016); *see also Payne v. Alviar*, No. 23-524, 2024 WL 1298044, at *4 (W.D. Mich. Mar. 27, 2024) ("[T]he MDOC's policy regarding grievances does not clearly require prisoners to name all relevant prison officials in the Step I grievance, rather than at some point in the grievance process."). After all, "promot[ing] early notice to those who might later be sued . . . has not been thought to be one of the leading

12

purposes of the exhaustion requirement," *Jones*, 549 U.S. at 219, but "allow[ing] prison officials 'a fair opportunity' to address grievances on the merits" has, *Reed-Bey*, 603 F.3d at 324 (quoting *Woodford*, 548 U.S. at 94–95).

Thus, "[f]ailure to name an individual may not necessarily render exhaustion inadequate," *Parsons v. Paige*, No. 24-10247, 2024 WL 4530308, *3 (E.D. Mich. Sept. 26, 2024)(Ivy, M.J.), *report and recommendation adopted*, 2024 WL 4530289 (E.D. Mich. Oct. 18, 2024)(Levy, J.), especially where the grievance gave "the MDOC sufficient information to identify the individual or individuals involved," *Gardiner v. Corizon Health, Inc.*, No. 21-167, 2023 WL 1794118, at *2 (W.D. Mich. Feb. 7, 2023).[5] But exhaustion is inadequate "as to a particular defendant not identified in the grievance if the plaintiff

---

[5] *See, e.g.*, *Nettles v. Edgar*, No. 22-119, 2022 WL 16556063, at *6 (W.D. Mich. Sept. 22, 2022), *report and recommendation adopted*, 2022 WL 16551462 (W.D. Mich. Oct. 31, 2022) ("Where a prisoner fails to identify a prison official by name, his grievance can still fulfill the purposes of exhaustion by the inclusion of other information identifying the official, such as the official's title or position or even the facts set forth in the grievance."); *Calhoun v. Hill*, No. 07-11613, 2008 WL 4277171, at *3 (E.D. Mich. Sept. 17, 2008)(Lawson, J.) ("[T]he Court may excuse a prisoner's failure to identify by name a particular defendant in a grievance when it is obvious from the facts alleged in the grievance that the defendant was involved."); *Frisby v. Cobar*, No. 22-00087, 2023 WL 4872567, at *5 (W.D. Mich. May 8, 2023) (recognizing that it may be possible to exhaust a claim against individuals named for the first time in a Step II grievance if the Step I grievance put the prison on notice of the issue requiring investigation).

specifically identifies other defendants by name and nothing in the grievance would put the unnamed defendants on notice." *Kensu v. Rapelje*, No. 12-11877, 2013 WL 1774637, at *4 (E.D. Mich. Apr. 25, 2013)(Roberts, J.) (internal citations omitted).

### 1. Defendant Anderson

Defendants argue none of Plaintiff's grievances allege misconduct by Anderson. Plaintiff only responds that he filed the grievances with the information "to the best of his ability." *See* ECF No. 113, PageID.3053.

Plaintiff's first allegation against Defendant Anderson in the Amended Complaint is that Anderson was "apprised of the retaliatory transfer and conduct" after he investigated Glover's grievance from January 5, 2017 (JCF 17-01-0248-24Z, ECF No. 108-8, PageID.2933–51) about such retaliatory transfer. ECF No. 29, ¶ 86. Plaintiff also alleges in the Amended Complaint that "Anderson pressured Mr. Glover" and "attempted to get [Glover] to sign off on the grievance" against Defendant Hill (JCF 19-07-1387-17A, ECF No. 108-8, PageID.2591–96) during the grievance interview. ECF No. 29, ¶ 150. But Plaintiff never mentioned Anderson in either grievances, and he does not contend that anything in the grievances would have put the MDOC or Anderson on notice that Glover alleged wrongdoing on his part, or that he filed a different grievance against Anderson. *See Kensu*, 2013 WL 1774637, at *4. Therefore, summary judgment on the basis of exhaustion as to the claims against Anderson in ¶ 86 and ¶ 150 is granted.

However, Glover *did* name Anderson in one of his grievances seeking that "corrective action be taken against Hokanson and Sgt. Isofna." JCF 19-08-1405-17A, ECF No. 108-5, PageID.2584. Glover noted in his Step I grievance that the incident "even got the attention of my wife who was talking to Capt. Anderson at the time" and that Glover "tried to resolve matters herein by talking to Capt. Anderson on 7-28-19 with no resolution." *Id*. at PageID.2583. But in the Amended Complaint, Glover not only alleges Anderson was "present" during the incident, but also that Anderson "refused to allow Mr. Glover to have the medication" too. ECF No. 29, ¶ 164. Thus, while the grievance named Anderson, it did not allege any misconduct or wrongdoing on the part of Anderson, such that Anderson was not put on notice that his alleged refusal to allow Glover to have medication was an issue he intended to grieve. *See Burton*, 321 F.3d at 575; *Vandiver*, 48 F. App'x at 519. Therefore, the claim against Anderson in ¶ 164 is unexhausted and summary judgment as to this claim is granted.

### 2. Defendant Gordon

Plaintiff alleges in the Amended Complaint that on November 18, 2016, Defendant Rivas aggressively and inappropriately touched his wife while doing a "shakedown" prior to a visit and Defendant Sierminski refused to allow them to seek out a supervisor when requested. ECF No. 29, ¶¶ 62–72. Glover filed a grievance against Rivas on November 22,

15

2016, which he appealed through Step III. JCF 16-11-2406-25E, ECF No. 108-8, PageID.2952–66.

Glover also alleges in the Amended Complaint that Defendant *Gordon* was "involved in the incident" too. ECF No. 29, ¶ 78. But Glover did not name Gordon at Step I of the grievance and did not provide any indication that a third individual was involved. Rather, Gordon's role in the incident stems from his *investigation* of the grievance after it was filed. He denied the grievance on the merits at Step I, noting that "[t]he entire incident the grievant described from start to finish was monitored and it was NOT consistent with what the grievant contended happened on that date." ECF No. 108-8, PageID.2966. Therefore, Glover's claim in ¶ 78 that Gordon was "involved in the incident" is unexhausted.

But at Step II, Plaintiff argued Gordon's investigation was insufficient and that he failed to interview a witness, *id*. at PageID.2955, which is consistent with Glover's allegation in the Amended Complaint that Gordon did not attempt "to speak with or attempt to contact the witness," ECF No. 29, ¶ 78. This claim was denied on the merits through Step III because Glover "failed to supply the names of additional witnesses in either step of his grievance for additional investigation." ECF No. 108-8, PageID.2957. Thus, the specific issue of Gordon's alleged failure to interview a witness in ¶ 78 was exhausted. While Defendants argue Glover did not specifically allege retaliation on the part of Gordon in the grievance, a grievance need not "allege a specific legal theory,"

*Burton*, 321 F.3d at 575, and whether Gordon's failure to interview the witness constitutes retaliatory conduct is a question of fact.

However, nowhere in the grievance process did Glover mention that Gordon pressured him, despite now alleging in the Amended Complaint that Gordon "spent over an hour pressuring Mr. Glover to sign off on the grievance." ECF No. 29, ¶ 75. Thus, the grievance did not provide "fair notice" to Gordon that his alleged intimidation was an issue Glover intended to grieve. *See Burton*, 321 F.3d at 575; *Vandiver*, 48 F. App'x at 519. As a result, summary judgment on the claim against Gordon in ¶ 75 is granted, and summary judgment on the claim in ¶ 78 is granted only as to the allegation that Gordon was "involved" in the incident, but not as to Gordon's alleged retaliatory failure to interview a witness.

### 3. Defendant Hokanson

Glover alleged in the Amended Complaint that Defendant "Hokanson continued to retaliate and has refused to allow Mr. Glover to sit at the handicapped table in the chow hall" despite having a detail for his cane. ECF No. 29, ¶ 180. Glover filed a grievance against several named members of the medical staff for not providing him a medical detail to sit at the handicapped table in the food hall. JCF-19-12-2340-12i1, ECF No. 108-5, PageID.2554–58. But Glover did not name Hokanson or refer to any other *custody* staff at any step of that grievance process. *See Step I Grievance*, *id.* at PageID.2557 ("The grievance is against NP Wright, RN Howard, HUM Landfair, and Health Care

17

attending staff."); *Step II Grievance*, *id*. at PageID.2555 (complaining that in order for the therapist to determine if he was eligible for a handicapped table, JCF medical providers should have notated such to be determined by the physical therapist); *Step III Grievance*, *id*. at PageID.2555 (complaining that he was "denied to see a doctor by medical staff" again). As a result, neither Hokanson nor any custody staff were on notice that Plaintiff intended to grieve the issue of Glover's access to the handicapped table against them too, such that the claim is unexhausted as to Hokanson. *See Kensu*, 2013 WL 1774637, at *4. Thus, summary judgment as to the claim against Hokanson in ¶ 180 is granted.

### 4. Defendant Marsh

In his Amended Complaint, Glover alleges that *both* "Defendant Rivas and Defendant Marsh refused to allow [Glover] to use the elevator to access his class on the second floor," ECF No. 29, ¶ 167, and "prevented [him] from using the elevator when he had a detail for a wheelchair and a cane and ordered him to walk painfully up and down near 60 stairs," *id*. at ¶ 262. Plaintiff filed a grievance about the incident "against C/O Rivas and JCF Supervisory staff" claiming that Defendant Rivas refused to allow Glover to use the elevator on August 10, 2019 and requesting that the Supervisory staff "monitor Rivas for more forms of retaliation." JCF-19-08-1494-28I, ECF No. 108-5, PageID.2615. But the grievance did not mention Defendant Marsh at any step, and the Complaint alleges Marsh is an officer, not a supervisory staff. ECF No. 29, ¶ 41. Therefore,

18

the grievance fails to provide sufficient notice to Defendant Marsh that Glover intended to grieve the issue against him. *See Burton*, 321 F.3d at 575; *Vandiver*, 48 F. App'x at 519; *Kensu*, 2013 WL 1774637, at *4. Summary judgment on the claims against Marsh in ¶ 167 and ¶ 262 is granted.

### 5. Defendant Salinas

Plaintiff alleges that Salinas acted in retaliation when he refused to give him the documents he requested related to a misconduct hearing in which he was found not guilty, despite knowing Glover needed the documents to show continued retaliation. ECF No. 29, ¶¶ 95–96. Glover filed a grievance against Salinas for failure to provide the documents, which was denied on the merits, and appealed through Step III. JCF-17-11-2632-7F, ECF No. 108-7, PageID.2892–2903.

But Defendants argue Plaintiff failed to mention the word "retaliation" in his grievance, and only alleged Salinas failed to follow policy, such that Glover did not sufficiently grieve the issue he raised in the lawsuit. *See Vandiver*, 48 F. App'x at 519. However, a grievance need not "allege a specific legal theory," but rather must give "fair notice of the alleged . . . misconduct that forms the basis of the . . . claim made against a defendant in a prisoner's complaint." *Burton*, 321 F.3d at 575. Here, the Step I grievance alleges that Salinas "intentionally" refused to provide the requested documents "due to staff nepotism and cronyism." ECF No. 108-7, PageID.2897–98. The Step II grievance also alleges that the

19

documents Glover received were "intentionally" made to look "so blurry and illegible" as a "deterrence to impede [his] ability to" provide a copy to the Court in his "current litigation." *Id.* at PageID.2895. Thus, the MDOC and Salinas were on notice of, and had a "fair opportunity" to address, Plaintiff's claims of nepotism, cronyism, and interference with current litigation, which a jury could find to be the basis for a retaliation claim, stemming from Salinas' refusal to provide the requested documents. *See Burton*, 321 F.3d at 575. Therefore, the claim against Salinas in ¶¶ 95–96 has been exhausted, and summary judgment is denied.

### 6. Defendant Landfair

On August 20, 2019, medical provider and Corizon Defendant Dr. Hallet examined Plaintiff and determined that he did not require an elevator detail despite complaints of back pain. Ex. I, Glover's Medical Records, ECF No. 108-13, PageID.3007. Dr. Hallet considered information provided by MDOC Defendant Sirena Landfair, the health unit manager ("HUM") at JCF, regarding statements made by custody staff who had seen Plaintiff "walking quite well and briskly without the cane in his unit and in the yard." *Id.* Dr. Hallet's report did not identify Landfair by name, but only by title, i.e. "HUM." *Id.*

Plaintiff filed a grievance against Dr. Hallett and "Health Care Supervisory staff" on August 23, 2019 for failure to issue an elevator detail, which he appealed through Step III. JCF 09-08-1543-12D3, ECF No. 108-5, PageID.2569–73. The Step I denial response repeated Dr.

Hallet's decision that "it is not felt that an elevator detail is warranted at this time" based on the HUM's report that custody staff had seen Glover walking briskly without a cane. ECF No. 108-5, PageID.2573. But this Step I denial response was reviewed by Landfair—the HUM—herself. Thus, in his Step II grievance, Plaintiff specifically named Landfair, complaining that Landfair's observation that he walked briskly without a cane was false, and that Landfair should not have participated in the grievance investigation because she was the one who relayed the (false) information. *Id*. at PageID.2570.

These allegations against Landfair, raised at Step II, correspond to the Amended Complaint's allegations that Landfair "instructed Defendant Hallet not to provide Mr. Glover an elevator detail" and that Landfair "falsely accused Mr. Glover of faking it and being seen walking without his cane," ECF No. 29, ¶ 168, which "deprived Mr. Glover of treatment for his serious medical needs and access to services available to others without any proper reason." *Id*. at ¶ 174.

Given that Dr. Hallet's report did not identify Landfair by name but only by title, and that Landfair, as the Health Unit Manager, is part of the Health Care Supervisory Staff, which Glover did name in his Step I grievance, the MDOC and Landfair were sufficiently on notice that Glover intended to grieve the issue as to Landfair. *See Nettles*, 2022 WL 16556063, at *6 ("Where a prisoner fails to identify a prison official by name, his grievance can still fulfill the purposes of exhaustion by the

inclusion of other information identifying the official, such as the official's title or position or even the facts set forth in the grievance.").

But Defendants contend the grievance did not give sufficient notice as to the *basis* for the misconduct, claiming the grievance grieved a policy violation related to Landfair's review of the initial response despite her involvement, and not medical deliberate indifference or that Landfair "instructed" Dr. Hallet to deny the detail. *See* ECF No. 108, PaegID.2493. Plaintiff did not respond to that argument. While a grievance need not "allege a specific legal theory," it must give "fair notice of the alleged . . . misconduct that forms the basis of the . . . claim made against a defendant." *Burton*, 321 F.3d at 575. Here, a claim that Landfair was *improperly involved* as a grievance reviewer because she "inform[ed] Dr. Hallet about what the custody staff said about Glover when she asked"— as the Step II respondent understood the claim to be—is different from a claim that Landfair "instructed" Dr. Hallet to deny the elevator detail— as Glover now claims in the Complaint. Thus, the specific allegation that Landfair "instructed Defendant Hallet not to provide Mr. Glover an elevator detail" in ¶ 168 is unexhausted. However, the remainder of ¶ 168, alleging that Landfair "falsely accused Mr. Glover of faking it and being seen walking without his cane," has been sufficiently alleged in the grievance to provide notice to Landfair that he intended to grieve the issue. Therefore, summary judgment in favor of Landfair on the claims in ¶ 168 may be granted in part—on the issue of Landfair's "instructing"

22

Dr. Hallet to deny the elevator detail—but denied in part—as to the alleged false accusation.

### 7. Defendant DeMyers

Plaintiff alleges in the Amended Complaint that DeMyers retaliated against Glover and was deliberately indifferent to his medical needs when DeMyers reviewed two (allegedly false) misconduct tickets Defendant Rivas had issued Glover on August 10, 2019 for "disobeying a direct order" and being "out of place." Glover complains that DeMyers found him guilty, ignoring Glover's explanation that Rivas retaliated against him, thereby not permitting Glover to use the elevator either, ECF No. 29, ¶ 169, and failing to intervene as a supervisor, *id*. at ¶ 266.

Misconduct hearing decisions are non-grievable and must be appealed through a different process. P.D. ¶ J (2019). In a three-page appeal letter specifically provided to challenge DeMyers' hearing decision, Glover continued to claim retaliation on the part of Defendant Rivas, and added that "Lt. DeMyers is culpable in conspiring against appellant's RIGHTS, due to cronyism and complicity in Rivas' retaliatory animus toward appellant." ECF No. 108-12, PageID.2993–94.

Defendants complain that the mention of DeMyers' alleged retaliation was buried in Glover's three-page handwritten appeal, that a single claim of retaliation is insufficient to exhaust the issue, and that the appeals response that "there is no evidence of any violation of due process of policy directives or evidence of retaliation," *id*. at PageID.2991,

only applied to the actions of Defendant Rivas and not of Defendant DeMyers. But the appeals response does not specify whether the merit-based evaluation of the retaliation claim applied only to Rivas and not DeMyers. And whether Glover's claim of retaliation against DeMyers is "sufficient" to exhaust depends on whether the MDOC and DeMyers had adequate notice that Glover intended to grieve the issue. The fact that he mentioned DeMyers by name and alleged some retaliatory purpose suggests they were on notice. Therefore, summary judgment on the claims against DeMyers in ¶ 169 and ¶ 266 is denied.

### D. Failure to Comply with Procedural Requirements

To exhaust administrative remedies, an incarcerated person must "follow[ ] the 'critical procedural rules' of the prison's grievance process." *Reed-Bey*, 603 F.3d at 324 (citing to *Woodford*, 548 U.S. at 94–95). Thus, "[a]n untimely or otherwise improper grievance does not satisfy the PLRA exhaustion requirement." *Bailey*, 2020 WL 4934314, at *2. Here, Defendants argue that some of Glover's grievances are unexhausted because they were rejected without reaching the merits based on a procedural issue, such as raising "multiple unrelated issues," being duplicative, or failing to attempt to resolve the issues with the staff member involved.

But "[t]he rejection of a grievance is not . . . the end of the analysis." *Williams v. Winn*, No. 18-11060, 2019 WL 2252012 at *6 (E.D. Mich. Feb. 27, 2019)(Davis, M.J.), *report and recommendation adopted*, 2019 WL

1417166 (E.D. Mich. Mar. 29, 2019)(Leitman, J.). Courts can "review the prison official's administration of the state grievance procedure," *id.*, and are "not required to blindly accept the state's application of the procedural rule." *Stone v. Harbaugh*, No. 23-10855, 2024 WL 2126667, at *3 (E.D. Mich. Apr. 15, 2024)(Altman, M.J.), *report and recommendation adopted*, 2024 WL 2116035 (E.D. Mich. May 10, 2024)(Ludington, J.) (citation omitted); *see also Johannes*, 2016 WL 1253266, at *6 (rejecting an argument that a grievance was unexhausted merely because it was rejected as "duplicative" of a prior grievance, reasoning that "[i]f this were the case, a prisoner would be barred from filing suit even if the grievance screener incorrectly rejects his grievance as duplicative").

Thus, "an improper rejection would constitute exhaustion." *Bailey*, 2020 WL 4934314, at *5; *see also Nettles*, 2022 WL 16556063, at *5 ("[T]he improper rejection rendered the grievance process unavailable to Plaintiff."). On summary judgment, Defendants bear the burden to show that "every reasonable jury would think the rejections were proper." *Johannes*, 2016 WL 1253266, at *6; *see also Savoie v. Oliver*, 731 F. Supp. 3d 862, 871–72 (E.D. Mich. Apr. 24, 2024)(DeClercq, J.) (denying summary judgment based on exhaustion where a "reasonable jury could conclude that MDOC improperly rejected [the grievance] as vague").

### 1. Initial Resolution

Defendants argue two of Plaintiff's grievances were unexhausted because they were rejected through Step III for failure to attempt to initially resolve the grievances with the staff member involved.

First, Defendants contend Plaintiff has not exhausted his administrative remedies on the claim in his Amended Complaint that "[d]uring the course of the grievance process," MDOC Defendant Karina Blair, facility manager at JCF, "intentionally falsified and/or altered documents, specifically the dates on which the response was returned to Mr. Glover, impacting his ability to timely respond." ECF No. 29, ¶ 113. Plaintiff filed a grievance on February 13, 2018 against Blair, which was denied based on Plaintiff's failure to initially attempt to resolve the issue with her. JCF-18-02-0394-28I, ECF No. 108-7, PageID.2853–60. Plaintiff does not dispute that he did not attempt to resolve with Blair, *see* ECF No. 113, PageID.3049, but he argues it was "impracticable" because the deadline had already passed due to the backdating. ECF No. 108, PageID.2856. But what matters is not the date on the allegedly backdated grievance, it is rather the date Glover became aware of the grievable issue—that is February 7. Glover does not claim that his ability to talk with Blair was hindered, beyond his own misunderstanding of the requirement. And as the Sixth Circuit noted, "the only way [for a prisoner] to determine if [an administrative] process [is] available, or futile, [is] to try." *Napier v. Laurel Cnty.*, 636 F.3d 218, 224 (6th Cir.

2011). Therefore, because Glover failed to first resolve the issue with Blair, the grievance was properly unexhausted, and summary judgment on the claim against Blair in ¶ 113 is granted.

Second, Defendants contend Plaintiff has not exhausted his administrative remedies on the claim that Defendant Rivas "refused to allow him to use the elevator to access his class on the second floor." ECF No. 29, ¶ 167. Plaintiff filed a grievance on August 15, 2018 against Rivas (JCF-19-08-1494-28I, ECF No. 108-5, PageID.2611–16), which was rejected through Step III because Plaintiff "did not attempt to resolve the issue with the staff member involved prior to filing the grievance." ECF No. 108-5, PageID.2616. At Step I, Plaintiff stated he "tried to resolve matters herein by writing the Warden's office on 8-14-19 with no resolution." *Id*. at PageID.2615. In response to the initial rejection for failure to resolve with *Rivas*, Glover explained at Step II that he "has made NUMEROUS attempts to resolve the issue being grieved. For example… 1st attempt was during the initial incident on 8-10-19 by informing Rivas of his inability to walk down 30 stairs, which she continued to direct grievant to do." *Id*. at PageID.2612. At Step III, in response to the second rejection, Plaintiff claimed the "administrative scheme is opaque." *Id*. It appears Glover believed that complaining to Rivas *during* the incident was sufficient as an attempt to initially resolve the issue, while the respondent expected Glover to speak with Rivas again *after* the incident. But Glover's grievance history suggests he knew

27

how to satisfy the duty to initially attempt to resolve the issue, as evidenced by the numerous letters he previously sent to other staff members with regards to other grievances, and therefore the process was not "so opaque." *See, e.g.*, March 11, 2018, Letter to McCumber-Hemry, ECF No. 108-7, PageID.2835. Had Plaintiff contended he tried to resolve with Rivas sometime *after* the incident, that would create a genuine dispute of material fact. But he did not do so, such that it is unclear what would be gained from Rivas' upcoming deposition. Therefore, the grievance was properly rejected, such that the claim against Rivas in ¶ 167 is unexhausted and summary judgment on this claim is granted.

### 2. Duplicate Grievances

On March 5, 2018, Glover filed a grievance against Defendant King, explaining that at the end of the misconduct hearing in which King found Glover guilty, King made inappropriate comments in retaliation for Glover pursuing litigation against his supervisor. JCF-18-03-0545-27A, ECF No. 108-7, PageID.2832 ("original grievance"). This is the basis for Glover's retaliation claim against King in ¶ 116 of the Amended Complaint. ECF No. 29, ¶ 116 (alleging that when Glover "tried to explain that everything in the ticket is fabricated," King responded "appeal it . . . [to] Deputy Smith . . . good luck;" Glover contends this statement implied that the appeal would be denied regardless of Glover's side of the story).

On March 8, Grievance Coordinator McCumber-Hemry rejected Glover's Step I grievance against King on the basis that a "decision by a hearing officer is non-grievable." ECF No. 108-7, PageID.2834. But Glover was adamant that his grievance was about King's retaliatory statement and not about King's finding of misconduct, which he acknowledged was not a grievable issue. Glover raised this through three different channels:

- On March 11, Glover wrote to McCumber-Hemry, explaining he was not challenging King's misconduct finding, but rather he was challenging King's "malicious comments." *Id.* at PageID.2835. As a result, Glover requested a new Step I grievance form for his grievance against King with the correct classification as retaliation in violation of the First Amendment (17B) instead of the current classification as "decision by a hearing officer" (27A). *Id.*

- On March 14, Glover filed a Step I grievance against McCumber-Hemry for mislabeling the grievance against King as 27A instead of 17B and erroneously rejecting it as a result. JCF-18-03-0620-28J, ECF No. 108-7, PageID.2821 ("later grievance").

- On March 25, Glover filed a Step II grievance on the original grievance, stating,

   > Grievant was explicit in his reasoning for filing this grievance, making it absolutely clear, by stating a precise claim of retaliation administered by Rum King . . . . The denial/rejection of this grievance is preventing grievant from an effective method of seeking redress for alleged violation. . . . This grievance deals with retaliation, not the decision by a hearing officer. *Id.* at PageID.2828.

29

On April 11, Glover's Step II appeal of the original grievance was rejected. On April 23, his Step I grievance of the later grievance against McCumber-Hemry was rejected by McCumber-Hemry herself, on the grounds that "[g]rievant failed to file it at the next step of the grievance process," that is at Step II of the original grievance. *Id*. at PageID.2822.

On May 6, Glover filed a Step II appeal on the later grievance against McCumber-Hemry, challenging her role in rejecting grievances involving her. *Id*. at PageID.2818. And the next day, on May 7, Glover filed a Step III appeal of the original grievance, this time explicitly naming McCumber-Hemry, alleging she "violated policy and procedures by not properly labelling my grievance for investigation" and reiterating that he "grieved the malicious comments stated by Rum King." *Id*. at PageID.2827. Both grievance rejections were upheld through Step III, without ever reaching the merits, nor re-classifying the original grievance.[6]

On summary judgment, Defendants must "show that every reasonable jury would think the rejections were proper." *Johannes*, 2016 WL 1253266, at *6. An improper rejection would constitute exhaustion. *Bailey*, 2020 WL 4934314, at *5. Of course, all parties agree that the

---

[6] While both parties state that the original grievance was eventually re-classified, the record does not indicate such, as the Step III rejection of the original grievance still identifies the grievance with the number 27A. ECF No. 108-7, PageID.2826.

outcome of a misconduct hearing is not grievable. P.D. ¶ F (2007). But whether the rejection of the original grievance was proper is a question of fact that hinges on whether "every reasonably jury would think" Glover's original grievance against King grieved a "[d]ecision[ ] made in minor misconduct hearings" or an "issue[ ] directly related to the hearing process (e.g., sufficiency of witness statements; timeliness of misconduct review; timeliness of hearing)." *Id*. Here, a reasonable jury could find that Step I of the original grievance challenged the way King spoke to Glover, which is different from a challenge to the sufficiency of the evidence or a challenge to the outcome of the hearing. Thus, a reasonable jury could find the rejection improper. As a result, summary judgment on the claim against King in ¶ 116 is denied.

On the contrary, it was proper to reject the later grievance against McCumber-Hemry because MDOC's policy required Glover to appeal the rejection of the original grievance (and raise the misclassification issue) at Step II instead of filing a new grievance. P.D. ¶ I (2007).[7] However, that does not mean that the claim that McCumber-Hemry "intentionally

---

[7] While Defendants claim the later grievance against McCumber-Hemry was rejected as a "duplicate" of the earlier-filed grievance against King, the later grievance was explicitly rejected on the ground that it was filed as a new grievance rather than appealed at Step II. *See also* P.D. ¶ Z (2007) ("The respondent shall identify in the response the specific policies, rules, or procedures that are directly related to the issue or conduct being grieved.").

mislabeled Mr. Glover's grievance so that it would not be investigated," ECF No. 29, ¶ 117, is unexhausted.

First, while Defendants claim Glover did not raise the issue of misclassification at Step II of the original grievance, MDOC's policy "does not say that appeals of grievance denials must challenge the procedural grounds for the denial," but simply states that "[a] grievant whose grievance is rejected may appeal the rejection to the next step as set forth in this policy." *Savoie*, 731 F. Supp. 3d at 874; *see also* P.D. ¶ I (2007). Even so, a reasonable jury could find that Glover did challenge McCumber-Hemry's misclassification in his Step II appeal, as he explicitly stated "[t]his grievance deals with retaliation, not the decision by a hearing officer." ECF No. 108-7, PageID.2828. In addition, the facts alleged in the Step II grievance clearly challenge the "denial/rejection" of the grievance, which was done by McCumber-Hemry, such that she was on notice that Glover intended to grieve the issue.

Second, the improper rejection of the first grievance against King arguably operated as a "dead end" for Glover. *See Ross*, 578 U.S. at 643; *see also Nettles*, 2022 WL 16556063, at *5 ("[T]he improper rejection rendered the grievance process unavailable to Plaintiff."); *Plaintiff's Response*, ECF No. 113, PageID.3051 ("This is a classic case of the MDOC attempting to find a loophole in their grievance procedures and denying a prisoner the rights to the grievance procedures that they have outlined for use."). In such circumstances, "[a] prisoner's lack of compliance may

be excused" if the prisoner made "affirmative efforts to comply with the administrative procedures," which were "sufficient under the circumstances," *Lee*, 789 F.3d at 677, to provide prison officials with a "fair opportunity to correct their own errors," *Woodford*, 548 U.S. at 94. Here, despite the improper rejection, Glover attempted to grieve the issue of misclassification in any way he could—all of them rejected—by (1) asking McCumber-Hemry to change the classification, (2) reiterating in his Step II appeal of the original grievance rejection that he was grieving retaliation, not the hearing decision, (3) filing a new grievance against McCumber-Hemry challenging the misclassification, and (4) explicitly naming McCumber-Hemry in his Step III appeal of the original grievance. Thus, McCumber-Hemry received sufficient notice that Glover intended to grieve the misclassification issue and Glover's lack of compliance can be excused.

Therefore, summary judgment on the retaliation claim against McCumber-Hemry in ¶ 117 is denied.

### 3. Raising Multiple Unrelated Issues

Defendants also argue Plaintiff's deliberate indifference claim against Defendants Reynolds, Freymuth, and Snyder in ¶¶ 160–161 of the Amended Complaint is unexhausted because the accompanying grievance was rejected through Step III on the grounds that it raised "multiple unrelated issues" in violation of P.D. ¶ J (2019). The Amended Complaint alleges that,

160. On 7/28/19, Defendants Sgt. Reynolds, Freymuth and Snyder, took Mr. Glover's walker and wheelchair from him while on a visit. Freymuth called Mr. Glover a crybaby and threatened to write Mr. Glover a ticket for assault and throw him into segregation if he were to fall on Freymuth from lack of balance.

161. Mrs. Glover had found a captain to return Mr. Glover's walker and permit Mr. Glover to go to healthcare after the visit. After healthcare refused to see Mr. Glover, Defendant Snyder took away his walker again.

ECF No. 29, PageID.650. Plaintiff filed a grievance related to that incident on August 1, 2019. JCF-19-08-1434-28C, ECF No. 108-5, PageID.2622–28.   In the Step I grievance, Glover explained that Reynolds and Freymuth took his walker as he was entering the visiting room around 3:00 PM, that Glover complained to Schiller who said Glover could get the walker back after the visit with his wife, that Freymuth said "here you go crybaby" when giving Glover the walker to go to the bathroom during the visit, that Freymuth threatened to write an assault ticket should Glover lose balance and fall on him when forcing him to strip down during the visit, and that a Sergeant (unnamed, presumably Reynolds) told Snyder to take the walker from him after Glover returned from medical. ECF No. 108-5, PageID.2626–67.

That grievance was explicitly rejected on the ground that it was not limited to "one (1) issue per grievance. You have included more than one (1) issue as prescribed in this procedure." *Id.* at PageID.2628. However, MDOC's policy mandates rejecting grievances containing "multiple

*unrelated* issues," as opposed to rejecting grievances that contain more than one potentially related issue. P.D. ¶ J (2019) (emphasis added).[8] Thus, Glover complained in his Step II appeal that the denial was improper because the "issues are all related," in that the events and harm complained of all stem from a single incident: Reynolds and Freymuth taking Glover's walker during the visit. ECF No. 108-5, PageID.2626. Nonetheless, the rejection was upheld, because the grievance contained "multiple issues in multiple locations at multiple times with different people." *Id.* at PageID.2625.

On summary judgment, Defendants must "show that every reasonable jury would think the rejection[ ] [was] proper." *Johannes*, 2016 WL 1253266, at *6. An improper rejection would constitute exhaustion. *Bailey*, 2020 WL 4934314, at *5. Here, whether the rejection was proper is a question of fact that hinges on whether a reasonable jury could find the issues Glover raised were "related" such that the grievance should not have been denied because of raising "multiple issues." Defendants have not pointed to a definition of what is considered "unrelated" and the Court did not find one in the record. A reasonable jury could conclude the events in the grievance were related because they all arose from the taking of the walker at the beginning of the visit, and

---

[8] Defendants rely on this "multiple unrelated issues" policy directive to argue the claim is unexhausted. They have not pointed to a different policy directive that supports rejecting grievances raising multiple issues, regardless of whether they are related or not.

then followed in an uninterrupted chain of events relating back to the walker-denial incident. Therefore, summary judgment on Plaintiff's claim against Defendants Reynolds, Freymuth, and Snyder in ¶¶ 160–161 is denied.

### 4. Untimeliness

Plaintiff alleges in his Complaint that Defendant Kennedy wrote him a "false misconduct ticket" on February 23, 2018, "falsely alleging Mr. Glover called Kennedy a 'f–ing f–got'" in retaliation for filing grievances. ECF No. 29, ¶ 114. Glover filed a Step I grievance against Kennedy for filing a false misconduct ticket in retaliation for prior grievances. JCF-18-03-0535-28e, ECF No. 108-7, PageID.2845–52; *see Reynolds-Bey*, 428 Fed. App'x at 501 ("As distinct from the outcomes of misconduct *hearings*, the filing of retaliatory misconduct *reports* is grievable under MDOC Policy Directive 03.02.130."). But Glover's retaliatory misconduct report grievance was rejected through Step III as untimely. ECF No. 108-7, PageID.2845–52. Though perhaps a harsh result—Glover was arguably only one day late—the rejection was proper under MDOC's policy which required that a grievance be filed within five business days after the grievant attempted to resolve the issue with the staff member involved. P.D. ¶ P (2007). Plaintiff offered no reason justifying the delay. Thus, the issue is unexhausted. *See Vandiver*, 326 F. App'x at 889.

And the allegation that Glover "tried to explain [during the misconduct hearing] that everything in the ticket [wa]s fabricated," ECF No. 29, ¶ 116, does not save the retaliation claim because nothing in the record indicates Glover raised the issue of Kennedy's retaliation at the hearing, as opposed to simply denying Kennedy's factual allegations. *See* ECF No. 108-10, PageID.2980 ("I did not say that from my cell door."). Summary judgment on the claim against Kennedy in ¶ 114 is granted.

### 5. Availability of Remedies

Plaintiff complains that "MDOC has a custom of denying prisoners grievances without ruling on the merits." ECF No. 113, PageID.3048. Plaintiff also questions whether due process is being provided to the prisoners within MDOC through their grievance system, and whether MDOC administered their grievance procedures in a manner as to make them unavailable to Plaintiff. *Id*. at PageID.3058.

The Court has addressed Plaintiff's "unavailability" arguments as to specific claims. But as to this generalized "unavailability" argument, there is no dispute that the grievance process was generally available to Glover while he was in custody, given the large number of grievances he submitted, and the large number of responses he received reaching the merits of his grievances. *See* Step III Grievance Report, Ex. D, ECF No. 108-5, PageID.2533–48; *Lee*, 789 F.3d at 679 (noting that the grievance process was "generally available" to a prisoner who submitted 13 Step I grievances and pursued 5 of them through Step III); *Craig v. Kizziah*,

37

2019 WL 5790958, at *1–2 (E.D. Ky. Nov. 6, 2019) ("[E]ven if the defendants themselves were unwilling to provide [plaintiff] with any relief, [plaintiff] does not allege that the administrative process on the whole . . . would be futile."); *Norris v. Covey*, No. 16-02719, 2018 WL 4346697, at *6 (M.D. Tenn. Aug. 20, 2018), *report and recommendation adopted*, 2018 WL 4333793 (M.D. Tenn. Sept. 11, 2018) (finding that "a reasonable juror could not infer that prison officials were unwilling to provide relief to a prisoner from the mere fact that they denied all of his grievances on procedural grounds" because "officials seriously considered each grievance and provided legitimate reasons for failing to reach their merits"). Glover's situation is comparable to the plaintiffs in the *Norris* and *Craig* cases: the grievance process was clearly available to Glover—except in specific circumstances discussed earlier—and the fact that multiple of his grievances may have been rejected based on a procedural defect is not evidence in and of itself that the process as a whole was futile.

## IV.   MOTION TO STAY DISCOVERY

Concurrently to filing the Motion for Summary Judgment, Defendants also moved to stay discovery pending resolution of the Motion for Summary Judgment. *See Coleman v. Washington*, No. 18-13171, 2019 WL 4990442, at *2 (E.D. Mich. Oct. 8, 2019) (citing to *Clardy v. Gilmore*, 773 F. App'x 958, 959 (9th Cir. 2019)) ("Defendants reasonably sought to stay discovery under Federal Rule of Civil Procedure 26(c) because it

would be an unnecessary burden and expense before threshold, dispositive issues, including exhaustion, were resolved."). Plaintiff consented to stay discovery, ECF No. 111, and in any event, the matter is **MOOT** given that the Court hereby resolved the Motion for Summary Judgment.

However, Plaintiff's consent to the Motion to stay discovery is informative in light of Plaintiff's repeated allegations—without any supporting affidavits—that the Motion for Summary Judgment is premature given that "[d]iscovery in the present case is ongoing" and "depositions have yet to occur." ECF No. 113, PageID.3044. Federal Rule of Civil Procedure 56(d) provides that, "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." The party seeking additional discovery must "affirmatively demonstrate . . . how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact." *Green v. Miller*, No. 13-14247, 2014 WL 1846063, at *6 (E.D. Mich. May 8, 2014)(Friedman, J.) (citing to *Good v. Ohio Edison Co.*, 149 F.3d 413, 422 (6th Cir. 1998)) (internal quotation marks omitted).

Plaintiff has not done so here, and Defendants note that the only depositions remaining are that of the Glovers—whose testimony Plaintiff could have provided the Court through affidavits—and of Defendant Rivas—whose testimony would not have an impact on Glover's failure to exhaust, as explained earlier. *See Parsons*, 2024 WL 4530308, *3 (noting that despite plaintiff's allegation that "additional discovery [wa]s needed to depose prison officials about how grievances were processed," there was "no evidence attached" to plaintiff's response, and it was "unclear how deposing officials about processing grievances would have an impact" on the failure to exhaust a grievance which failed to name the defendant).

## V.   CONCLUSION

For the foregoing reasons, MDOC Defendants' Motion for Summary Judgment (ECF No. 108) is **GRANTED IN PART** and **DENIED IN PART**. MDOC Defendants' Motion to Stay Discovery (ECF No. 109) is **DENIED** as **MOOT**.

It is **FURTHER ORDERED** that Plaintiff Richard Glover's legal claims premised on the following factual allegations are **DISMISSED WITHOUT PREJUDICE**:

- Anderson (Count III) ¶¶ 86, 150, 162, 164, 208, 251
- Blair (Count III) ¶ 113
- Brown (Count IV) ¶¶ 171, 175, 183, 185, 265
- Davidson (Count IV) ¶¶ 187, 261

- Gordon (Count III) ¶¶ 75, 78 (only that Gordon was "involved in the incident"), 94, 251
- Hill (Count III) ¶ 188
- Hokanson (Count III) ¶¶ 139–142, 180, 188
- Kennedy (Count III) ¶ 153, 114, 251
- King (Count III) ¶ 158
- Kisor (Count III) ¶ 158
- Landfair (Count IV) ¶ 187, 168 (only as to the claim that Landfair "instructed Defendant Hallet not to provide Mr. Glover an elevator detail")
- Marsh (Count IV) ¶¶ 167, 262
- Nagy (Count III) ¶¶ 199, 207, 251
- Parsons (Count III) ¶¶ 143, 202, 251
- Rivas (Count III) ¶¶ 82, 129; (Count IV) ¶ 167
- Rurka (Count III) ¶¶ 198–199, 251

Because other claims remain pending, the Court will set a Status Conference in order to issue a Scheduling Order with dates governing the subsequent phases of the case.

**IT IS SO ORDERED**.

Dated: March 31, 2025            /s/Terrence G. Berg
                                 TERRENCE G. BERG
                                 UNITED STATES DISTRICT JUDGE